# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 00-60545

_____

JOY BEATTIE,

Plaintiff-Appellant,

VERSUS

MADISON COUNTY SCHOOL DISTRICT;
MADISON COUNTY BOARD OF EDUCATION;
BERT JACKSON, IN HIS OFFICIAL CAPACITY;
KEN MCCOY, IN HIS OFFICIAL CAPACITY;
SHIRLEY SIMMONS, IN HER OFFICIAL CAPACITY;
MARY MCDONALD, IN HER OFFICIAL CAPACITY;
LEE MILLER, IN HIS OFFICIAL CAPACITY;
KEN ACTON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;
MARIA A. JONES, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

July 5, 2001

Before REYNALDO G. GARZA,
HIGGINBOTHAM, and SMITH,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Joy Beattie, an at-will employee, was fired as a secretary for Madison County Schools, allegedly in retaliation for her support of Michael Kent's candidacy for school superintendent in opposition to the incumbent, Maria Jones. Beattie sued the school district, the superintendent, the principal, and the school board members for First Amendment retaliation under 42 U.S.C. § 1983 and for violation of MISS. CODE ANN. § 23-15-871, which prohibits certain actions by employers regarding employee's voting rights. Beattie asked for a permanent injunction, reinstatement, punitive damages, and compensatory damages for lost past and future wages, mental anguish, emotional stress, and loss of reputation. The district court dismissed the state law claim without prejudice and granted summary judgment for the defendants on the § 1983 claim on the basis that Beattie had failed to establish a causal connection between her political activity and her discharge, an essential element of her § 1983 claim.[1]

Beattie appeals, contending that the district court erred in concluding that she failed to prove causation and erred in denying her motion to conduct additional discovery under FED. R. CIV. P. 56(f). We affirm.

___

[1] *See, e.g., Sharp v. City of Houston,* 164 F.3d 923, 932 (5th Cir. 1999) (listing elements of a First Amendment retaliation claim under § 1983 as (1) engaging in a protected activity; (2) suffering an adverse employment action; (3) a causal connection between the two; and (4) the execution of a city policy causing the adverse action).

I.

From 1994-96, Beattie worked as secretary to Mike Kent, principal of Rosa Scott Middle School. From 1996 until her termination, she worked for Ken Acton, the principal of Olde Towne Middle School. Beattie claims she had no history of disciplinary problems, but school board members indicated that parents had complained about her rudeness. On April 6, 1999, Acton wrote a letter recommending her for annual re-employment.

Later that month, Larry Roberts, a city alderman and parent, came into the office and discussed the upcoming election for school superintendent. Acton suggested a reason that Roberts should not vote for Kent, and Beattie interjected her opinion to the contrary. Acton orally reprimanded Beattie and instructed her that as a school employee, she owed the current superintendent her loyalty. Beattie testified in her deposition that Acton instructed her not to express her opinions about Kent's candidacy "out of the office or anywhere because it was perceived . . . as coming from me [Acton]." Acton supported Jones in the election.

In June 1999, Jones visited the school and informed Beattie that she had heard that Beattie had made negative comments about her position on a proposed bond issue to build a new high school. Shortly thereafter, Jones asked Beattie to stuff envelopes for her campaign at work, which Beattie did. Jones never delivered the envelopes. A few days later, Acton drafted a letter recommending that Beattie be transferred "not based on Joy's ability to do the job but on philosophical differences on how a middle school should operate," such as her support of Who's Who Among American High School Students, her opposition to Acton's proposals on cheerleaders and the dance

team, and her support of membership in the Little Six Conference for the football team.

Beattie put up signs in her yard to show her support for Kent. When Jones was campaigning in the neighborhood, she allegedly commented to one of Beattie's neighbors that "Joy Beattie has two signs in her yard [supporting Kent] and I'm going to her house to find out why." Jones did not confront Beattie about the signs.

The next Monday, Acton revised his letter recommending Beattie's transfer, proposing instead that she be removed. Acton sent the memo to Jones. Beattie claims that all the reasons cited in the memo for her removal occurred before the April 6 letter. Beattie believes that four days later, Acton met with a school district attorney, James Keith, and revised the letter to include additional reasons for her termination, most notably an allegation of a breach of confidence.

Jones presented Acton's recommendation to the board, which on July 19, 1999, voted unanimously to terminate Beattie. The board previously had discussed complaints that Beattie was rude to teachers, parents, and students. All board members testified in affidavits that they were not aware of Beattie's political activities or any alleged misconduct by Jones and Acton and that they were neutral in the campaign for superintendent. Further, they stated that they would have terminated Beattie without Acton's recommendation.

## II.

We review a grant of summary judgment *de novo,* applying the same standard as did the district court. *E.g.*, *Bos Dairy, L.C. v. United States Dep't of Agric.*, 209 F.3d 785, 786 (5th Cir. 2000). "Summary judgment should be used 'most sparingly in . . . First Amendment case[s] . . . involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities.'" *Benningfield v. City of Houston,* 157 F.3d 369, 377 (5th Cir. 1998) (quoting *Porter v. Califano,* 592 F.2d 770, 778 (5th Cir. 1979)). Summary judgment should be granted, however, "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1071 (5th Cir. 1994) (en banc).

## III.

Beattie contends that the district court erred in deciding that she failed to present summary judgment evidence that her political speech and activities motivated her termination and therefore that the school district was not liable. She also argues that the court erred in concluding that Acton and Jones did not cause her adverse employment action. To prevail on her First Amendment retaliation claim, Beattie must show either that the school board acted in retaliation or that the improper motives of another actor can be imputed to it.[2]

To prove a First Amendment retaliation claim, Beattie must show that (1) she suffered an "adverse employment decision"; (2) her

---

[2] Under § 1983, Beattie may sue a local governing body, such as the school district, or the school board as policymaker for the district, for monetary, declaratory, or injunctive relief if the challenged action implements or executes a policy officially adopted by that body's officers. Neither the school board nor the school district can be liable for the actions of Acton and Jones, if impermissible, under a respondeat superior theory. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, 694 (1978).

speech involved "a matter of public concern"; (3) her "interest in commenting on matters of public concern . . . outweigh[s] the Defendant's interest in promoting efficiency"; and (4) her speech motivated the adverse employment decision. *Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216, 220 (5th Cir.), *cert. denied* 528 U.S. 1022 (1999).[3] The only contested issue is causation.

To prevail, Beattie must show that she engaged in protected conduct and that it was a motivating factor in her discharge. Then, the burden shifts to defendants to show by a preponderance of the evidence that they would have come to the same conclusion in the absence of the protected conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). Beattie has not met her initial burden of demonstrating that her speech motivated her discharge.

A.

The parties do not contest that the board is a policymaker for the school district or that the board fired Beattie. They appear to agree that the district may be liable for the board's actions because the board is a policymaker for the school district in its capacity to terminate employees.[4] If the board acted in retaliation against Beattie for her support of Kent, the school district may be liable.

Beattie's evidence that the board violated her rights is based on her assertion that she had an excellent record with no reprimands. She believes the conversation with Roberts about the upcoming election precipitated her difficulties at work and that the court should infer improper motive from the timing of the firing. Moreover, she asserts that the stated reasons for her firingSSinsubordination, disclosure of confidential information, undermining Acton, rudeness to parents and teachers, violating school policy, and being disloyal to ActonSSoccurred before Acton's initial recommendation of re-employment. She states, without corroborating evidence, that the allegations of breach of confidence and rudeness have no basis in fact. Thus, she contends, Acton's real motive in changing the recommendation from a transfer to a removal (and Jones's real motive in accepting it) was retaliation.

Even if Beattie is correct, her reasoning bears no relation to the school board's liability unless either the board acted in retaliation independently or the improper motives (if proven) of Jones and Acton can be imputed to the board. Acton and Jones cannot be liable independently if they did not make the final decision.[5] If, however, the board adopted the allegedly impermissible motives of Acton and Jones through acting on the recommendation or delegated its policymaking authority in the area of at-will employment to Jones, it may be liable.

1.

Municipal liability for constitutional torts arises when the execution of an official policy causes the injury. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). "[A] single

---

[3] *See also Sharp,* 164 F.3d at 932.

[4] *Cf., e.g., Harris,* 168 F.3d at 225 (finding that a board's decision to affirm a superintendent's recommendation to transfer a teacher was an act of official policy, noting that "[o]n at least two occasions, we have held that the board of trustees of an independent school district . . . is a policymaker for purposes of § 1983").

[5] Beattie has abandoned all claims against Acton and Jones individually.

4

action by a municipal official possessing final policymaking authority regarding the action in question constitutes the official policy of the municipality and . . . the determination of whether a municipal official wields final policymaking authority regarding a particular action constitutes a question of state law." *Brady v. Fort Bend County,* 145 F.3d 691, 698 (5th Cir. 1998) (citing *McMillan v. Monroe County,* 520 U.S. 781 (1997)). In Mississippi, the school board has the power "[t]o select all school district personnel." MISS. CODE ANN. § 37-7-301(p) (2000). The question, then, is whether the board delegated that authority to Jones.

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal authority with respect to the action ordered. The fact that a particular officialSSeven a policymaking officialSShas discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.[12]

>> [12] Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board.

*Id.* (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 484 & n.12 (1986)). Beattie argues that the board's deference to the superintendent's recommendations on at-will employment matters exhibits a delegation of policymaking authority and suggests that this alleged complete control over a particular area makes Jones an official policymaker whose liability can be imputed to the district and the board.

An official may be a policymaker for the county in a particular area or on a particular issue.[6] In *Brady,* we noted that discretion alone is not enough; the official also must create policy. The official in *Brady,* however, received his authority from a state statute that granted him final policymaking power. Even more importantly, his authority was unreview-

---

[6] *See Brady,* 145 F.3d at 699 (internal citations omitted) (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988) (plurality opinion) (observing that "the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area")).

able by any other body. *Id.* at 700.[7]

The board oversaw Jones's employment decisionsSSan indication that she may not be a final policymaker. The mere existence of oversight, however, is not enough; the oversight must pertain to the area of authority in question. *Brady,* 145 F.3d at 701. For example, a superintendent's transfer of a teacher to another position might be a final policy decision if that action was unreviewable, even if the superintendent did not have complete control over the hiring and firing of district personnel. *See id.* at 701 (citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701 (1989)).

Jones presented her recommendation to the board, which terminated Beattie. Because the board oversaw the precise action in question, Jones did not have final policymaking power. By the same analysis, Acton is not a final policymaker: Jones oversaw each of his actions pertaining to Beattie's discharge. Therefore, neither the board nor the school district is liable for their actions, unless their allegedly improper motives can be imputed to the board.

## 2.

Even if speech on a matter of public concern was a substantial or motivating factor in the termination, a defendant may escape liability by demonstrating that it would have taken the same action in the absence of the protected conduct. *Mt. Healthy,* 429 U.S. at 287. As explained above, Beattie must prove a causal connection between her constitutionally-protected activity and the board's decision.[8] Because Acton and Jones are not final policymakers, Beattie must impute their allegedly improper motives to the board by demonstrating that the board approved both Jones's decision and the basis for it.[9]

All board members testified that they had no idea that Beattie supported Kent in the election and that they had remained neutral in the campaign. They further testified to personal knowledge of complaints against Beattie, such as those detailed in the letter recommending her termination. The letter maintained that Beattie refused to support school polices and disclosed confidential em-

---

[7] *See also Reeves v. Claiborne County Bd. of Educ.,* 828 F.2d 1096, 1102-03 (5th Cir. 1987) (finding a superintendent liable for transferring a teacher in retaliation for her testimony in a court case and emphasizing the importance of oversight by remanding for a determination of whether a school board customarily deferred to the decisions of the superintendent); *Neubauer v. City of McAllen,* 766 F.2d 1567, 1573-74 (5th Cir. 1985) (holding a governmental entity liable under § 1983 "where the policy was made by an official to whom the governing body had given policymaking authority," noting that the official's decisions were not subject to review), *overruled on other grounds by Walther v. Lone Star Gas Co.,* 952 F.2d 119, 126 (5th Cir. 1992).

[8] *See, e.g., City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (requiring a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation"); *Polk County v. Dodson,* 454 U.S. 312, 326 (1981) (holding that "official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body") (citing *Monell,* 436 U.S. at 694).

[9] *E.g., Praprotnik,* 485 U.S. at 127 ("If the authorized policymakers approved a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").

6

ployment information.[10] Beattie does not dispute defendants' position that the board saw only this letter (not the previous draft recommending a transfer) and had no actual knowledge of her campaign activities.[11] If there is no evidence that the board knew of the protected activity, Beattie cannot show that the activity motivated retaliatory behavior.[12]

Beattie urges that *Harris* controls because there, we found a board liable under § 1983 for approving a superintendent's recommendation; the board delegated employment authority to the superintendent, and in ratifying his decision through a grievance hearing, the board assumed liability. *Harris,* 168 F.3d at 225. During that grievance procedure, however, the board acquired actual knowledge of the basis for the termination.[13] Without a showing that the

board had actual knowledge of the alleged improper basis of Jones's and Acton's recommendation, the board cannot be liable for the alleged retaliation. *See Cabrol,* 106 F.3d at 108.[14]

Even assuming the board did terminate Beattie in retaliation for her campaign activities, it can escape liability, because it would have terminated her for other reasons. *Mt. Healthy,* 429 U.S. at 287.[15] Board members testified that they would have voted to terminate Beattie even without Acton's letter, based on the complaints they received that she was rude to students, parents, and teachers. Beattie offers no evidence to refute

---

[13](...continued) sumably Beattie did not avail herself of this privilege.

[14] There is an exception to this rule where the final policymaker's decision is merely a "rubber stamp." If an employee can demonstrate that the subordinate's evaluation was tainted by an illegal intent and that it had sufficient influence or leverage over the ultimate decisionmaker, the motives of the subordinate become relevant. *See Rios v. Rossotti*, No. 00-50226, 2001 U.S. App. LEXIS 9420, at *19-*20 (5th Cir. 2001). Beattie suggested that the board merely "rubber stamped" the superintendent's employment decisions, but she presented no evidence to support that assertion.

[15] *See also Texas v. Lesage,* 528 U.S. 18, 21 (1999) ("The government can avoid liability by proving that it would have made the same decision without the impermissible motive."); *White v. South Park Indep. Sch. Dist.,* 693 F.2d 1163, 1169 (5th Cir. 1982) ("[E]ven if we assume the exercise of protected first amendment activity played a substantial part in the decision to terminate an employee, the termination is not unconstitutional if the employee would have been terminated anyway.").

---

[10] Beattie allegedly discussed, with a teacher applicant, names that had been recommended to the board, before the board's final decision, and sent an e-mail to other teachers after a teacher had resigned but before the board had had a chance to act.

[11] She does not suggest that the school policies with which she openly disagreed are protected speech on matters of public concern.

[12] *See Cabrol v. Town of Youngsville,* 106 F.3d 101 (5th Cir. 1997) (affirming summary judgment for a town and mayor who terminated an employee who had challenged a cockfighting ordinance, because no evidence indicated that they knew about his opposition to the ordinance).

[13] Mississippi law provides that a terminated employee of a school district may initiate a grievance hearing before the board to contest his termination. MISS. CODE ANN. § 37-9-111 (2000). Neither party references this procedure, so pre-
(continued...)

these affidavits. Thus, the board's independent reason for her termination shields it from liability under *Mt. Healthy*.[16]

### B.

Beattie claims that because she was fired at the recommendation of Acton and Jones, and because they were retaliating against her for support of a political candidate, they are independently liable. If Acton and Jones had fired Beattie for the reasons she alleges, they may have violated her First Amendment rights. "[A] public employer cannot act against an employee because of the employee's affiliation or support of a rival candidate unless the employee's activities in some way adversely affect the government's ability to provide services." *Vojvodich v. Lopez,* 48 F.3d 879, 887 (5th Cir. 1995).[17]

### 1.

As we have noted, Acton and Jones did not fire Beattie directly, but merely recommended her termination to the board, which made the final decision. If Acton and Jones did not cause the adverse employment action, they cannot be liable under § 1983, no matter how unconstitutional their motives. Moreover, even if the board adopted their recommendation, that recommendation exhibited no unconstitutional motive on its face. Further, the evidence suggests that the board fired Beattie for independent reasons, and Beattie offers nothing but her own beliefs to the contrary.

---

[16] *See Gerhart v. Hayes,* 217 F.3d 320, 322 (5th Cir.), *cert. denied,* 121 S. Ct. 573 (2000).

[17] *See also Reeves,* 828 F.2d at 1103 ("[A] government employer cannot retaliate against an employee for the exercise of first amendment rights.").

"The Constitution requires only that an employee be placed in no worse a position than if he had not engaged in the conduct." *White,* 693 F.2d at 1169. Because the board fired Beattie for permissible, constitutional motives independently of Acton's and Jones's recommendation, that superseding cause shields them from liability.

### 2.

Beattie attempts to connect the board's decision, by its timing, to Acton's and Jones's motives. Timing alone does not create an inference that the termination is retaliatory.[18]

Therefore, Beattie has not shown a causal connection between Acton's and Jones's alleged retaliatory motives and her adverse employment action. Because the board made its ultimate decision independently of these unproven unconstitutional aims, summary judgment was proper.

### IV.

Beattie contends that the district court erroneously denied her motion for additional discovery under rule 56(f).[19] We review for

---

[18] *See Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir. 1999) (holding that a retaliation claim lacked merit where the employee mentioned his EEOC filing minutes before his termination for insubordination, but no other evidence suggested a retaliatory motive); *see also O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1370 (7th Cir. 1993) ("[T]he fact that protected speech may precede an adverse employment decision alone does not establish causation under *Mt. Healthy.*").

[19] The rule provides:

Should it appear from the affidavits of a party opposing the motion that the party
(continued...)

abuse of discretion a decision to end discovery.[20]

Rule 56(f) motions are generally favored and should be liberally granted. *Stearns Airport Equip. Co. v. FMC Corp.,* 170 F.3d 518, 535 (5th Cir. 1999). Beattie "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Krim,* 989 F.2d at 1442 (internal citations omitted). She must show (1) why she needs additional discovery and (2) how that discovery will create a genuine issue of material fact. *Stearns,* 170 F.3d at 535 (citing *Krim*, 989 F.2d at 1442). If Beattie has not diligently pursued discovery, however, she is not entitled to relief under rule 56(f). *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 28 F.3d 1388, 1397 (5th Cir. 1994). We need not address whether Beattie has shown why she needs additional discovery to create a genuine issue of material fact, because she was not diligent. *Id.*

---

[19](...continued)

cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f).

[20] *See Church of Scientology v. Cazares,* 638 F.2d 1272, 1289 (5th Cir. Mar. 1981) (reviewing decisions determining scope and effect of discovery for abuse of discretion); *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1441 (5th Cir. 1993) (reviewing, for abuse of discretion, decisions to preclude discovery before granting summary judgment).

at 1397.

Beattie had several months, from the time she sued, to depose the board members, who are named defendants. She submits that she did not depose them earlier because the parties were in settlement negotiations, but a party suspends discovery at his own risk. She claims she did not become aware that she needed to depose the board members until sixteen days before the discovery deadline, and then the parties could not find a mutually agreeable time. She filed her rule 56(f) motion three days after the defendants filed their motion for summary judgment, the date at which she alleges she first became aware of the contradiction in testimony.[21]

Defendants explain that Beattie knew, as early as February 2000, when the fact was included in responses to interrogatories, that the board had voted to terminate her and had cited her rudeness to parents and teachers as a reason for her dismissal. Moreover, Jones stated in deposition that board members had received complaints about Beattie. Furthermore, Beattie became aware that she needed to depose school board members as early as March 15, giving her sixteen days before the end of discovery to seek an extension. Instead, she waited until after defendants had filed their motion for summary judgment.

---

[21] Although Beattie claims that defendants, shortly before the expiration of discovery, produced documents that warranted additional discovery, she has not indicated with specificity how these documents raised issues of material fact. The district court found that they merely clarified issues raised earlier in the depositions of Acton and Jones, and Beattie received an extension of time to file her response to the motion for summary judgment to respond to those documents.

Even though rule 56(f) motions should be liberally granted, "[a] district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Kelley v. Syria Shell Petroleum Dev., B.V.,* 213 F.3d 841, 855 (5th Cir.) (internal quotation marks omitted), *cert. denied*, 121 S. Ct. 426 (2000). Although Beattie's conduct during discovery does not rise to the level disparaged in *Leatherman,*[22] the district court acted within its discretion in concluding that she had not pursued discovery diligently enough to warrant relief under rule 56(f).

AFFIRMED.

---

[22] In *Leatherman,* plaintiffs conducted very little discovery for more than one year before filing their rule 56(f) motion. *Leatherman,* 28 F.3d at 1397.