United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 5, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-30087 c/w 03-30185

GREGORY JOHNSON,

Plaintiff - Appellee,

v.

STATE OF LOUISIANA, Etc; ET AL.,

Defendants,

PAUL W. FONTENOT, Deputy Secretary,
Department of Public Safety and Corrections;
JOHN WATSON, Sergeant, Department of
Public Safety and Corrections; LINDA
CLARK, Motor Vehicle Officer; SHIRLEY
ARMSTRONG, Motor Vehicle Officer;
JEFFREY K. WATTS, Trooper,

Defendants - Appellants.

Appeals from the United States District Court
for the Eastern District of Louisiana, New Orleans

Before BENAVIDES, STEWART, and DENNIS, Circuit Judges.

Benavides, Circuit Judge:

Defendants Deputy Secretary Paul Fontenot, Sergeant John Watson, Officer Linda Clark,

Officer Shirley Armstrong, and Trooper Jeffrey Watts appeal a jury verdict reached in favor of

1

Plaintiff Gregory Johnson. The jury found that the defendants fired Johnson in violation of 42 U.S.C. § 1983 and the First Amendment right to free speech. For the reasons that follow, we reverse the judgment of the district court and remand for entry of judgment in favor of all five defendants.

## I

Johnson was employed by the Louisiana Department of Public Service and Corrections as a motor vehicle inspector in the Harvey office. Johnson's supervisor was Watson, the District Supervisor. Fontenot was the Deputy Secretary of the entire Department. Clark and Armstrong also worked in the Harvey office. Watts worked in Internal Affairs.

On July 21, 1994, Johnson and three of his coworkers delivered a complaint to the Internal Affairs Division of the State Police concerning Watson and Paul Speer, the Acting District Supervisor. Johnson had been the Acting District Supervisor until June 1994, when Watson demoted him and replaced him with Speer. Before his demotion, Johnson had supervised the other three employees who signed the complaint. The complaint accused Watson of payroll fraud, intimidation, favoritism, disrespect, racial and sexual discrimination, abusiveness towards subordinate officers, unfairness, and sexual harassment.[1] The sexual harassment allegation was that Watson had attempted to put his hand on the breast of a female officer while massaging her shoulders and that he had made comments about the size of the officer's breasts.

Because the officers submitted the complaint to Internal Affairs instead of to Watson's supervisor, Watts investigated them for violating the chain of command. He also investigated

---

[1] The complaints regarding Speer were that he received bribes, kissed an employee from another department, directed employees not to do their jobs, and mistreated a subject in custody.

their allegation of bribery against Speer. Although he did not officially investigate Watson, Watts asked all the officers who signed the complaint to provide any evidence they had to support their allegations.

Johnson identified Clark as the victim of Watson's sexual harassment. He said that he personally had observed the massaging incident and that Watson had bragged later that he had almost had his hand on Clark's breast. Another officer corroborated that he had seen Watson massaging Clark's shoulders, but he had not been in a position to see if Watson attempted to touch her breast. The other complaining officers had no information regarding that incident. Watts also took statements from Watson and Speer, who both denied the allegations.[2] Clark submitted a written statement denying the allegation.[3]

Watts eventually concluded that all four employees violated the chain of command. Johnson was reprimanded, but the other three officers were not.

According to Johnson, in August Armstrong told him and another officer that Watson had again attempted to touch Clark's breast and that Armstrong had reported the incident to her supervisor, Theresa Gendusa. In response to Armstrong's information, Johnson submitted a request to Fontenot that he re-consider an investigation into Watson's behavior.

Watts then investigated whether Johnson had made false allegations of sexual harassment

---

[2] He also took a statement from the employee allegedly kissed by Speer. She denied it.

[3] She wrote: "[O]ne of the MVP officers in the Harvey office has made a false allegation on my behalf. I'm writing this statement to say that by no means have I ever felt sexually harassed or threatened by Sergeant John Watson."

against Watson.[4]  Watts's supervisor told Watts that he believed the sexual harassment allegations to be false.

For the second investigation, Watts interviewed Johnson, Clark, Armstrong, and Gendusa. Watts did not interview the other officer who, according to Johnson, heard what Armstrong said in August.  Clark again denied that she had ever been sexually harassed by Watson.  She also complained that Johnson went by her desk every day for two weeks asking her to submit a written statement that Watson had harassed her.  She said that Johnson told her that he and the other officers who signed the initial complaint could lose their jobs if she did not support their allegations.  Clark stated that she had become physically ill from the stress of Johnson's repeated requests.  Armstrong told Watts that Watson had not harassed Clark and that Johnson had been pressuring her to state otherwise.  She admitted that she told Johnson that Watson had said that Clark would not allow him to touch her breasts, but she said that everyone understood it was a joke.  She also stated that Johnson had been pressuring her to make a statement that Clark had complained to her of sexual harassment.  She, too, claimed the stress of Johnson's requests was making her ill.  Gendusa said no one had reported any sexual harassment to her.

Watts submitted his investigative report to Fontenot on September 15.  In it, he reported the denials of sexual harassment by all three women and the complaints about Johnson's behavior. He suggested that Johnson might have a vendetta against Watson for demoting him from the Acting District Supervisor position.  Clark told Watts that she believed this to be the case, and Johnson admitted he was unhappy about the demotion and felt that Watson's decision was based

---

[4] Johnson emphasizes that his allegation of Watson's second attempt to touch Clark's breast was never independently investigated.  The investigation of whether Johnson made a false accusation, however, covered the same material that investigation would cover.

4

on racial bias and friendship. Watts concluded:

> Based on the testimony and written statements provided by Linda Clark, Shirley Armstrong, and Theresa Gendusa, it is quite obvious that the allegation of sexual harassment is false. Officer Johnson was well aware of this during the interview,[5] however, he continued to accuse Sergeant Watson of sexually harassing Linda Clark without any proof.

On November 16, Fontenot sent Johnson a notice of "intended dismissal" because of Johnson's persistent untrue allegations of sexual harassment. In the notice, Fontenot discussed Johnson's repeated attempts to get Clark and Armstrong to submit statements supporting his claims. Fontenot invited Johnson to submit evidence in support of his allegations to avoid dismissal. In response, Johnson requested further investigation and indicated his willingness to elicit information from Clark while wearing a wire. He did not, however, submit any further evidence. Fontenot fired Johnson on December 9.

Johnson sued the State of Louisiana and the defendants in their individual and official capacities in the district court. The district court dismissed the claims against the State of Louisiana and against the defendants in their official capacity. The defendants filed a motion to dismiss on the basis of qualified immunity. The district court denied the motion, and the defendants appealed. We dismissed the appeal for lack of subject matter jurisdiction because we found the district court's determination depended on questions of fact. *Johnson v. Louisiana*, 111 F.3d 893 (5th Cir. 1997) (unpublished table decision).

The parties then tried the case to a jury. At trial, Johnson highlighted inconsistencies between Clark's and Armstrong's statements – as compared to each other and as compared to their own earlier statements – as well as facts that belied some of their statements (for example,

---

[5] Watts had informed Johnson of Clark's denial.

Armstrong complained of being so ill from the stress that she needed to see a doctor, but at trial she admitted she had not gone to see a doctor). He presented no evidence that either Watts or Fontenot were aware of these inconsistencies at the time of Johnson's termination. In special interrogatories, the jury found that the defendants had not proved by a preponderance of the evidence that Johnson's accusations were made in bad faith and that all of the defendants "acting individually and/or collectively intentionally retaliated against [Johnson] for his accusations of sexual harassment." The district court entered a judgment in Johnson's favor against all five defendants in the amount of $118,500. It later awarded him attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## II

We will overturn a jury verdict "only if we conclude that, after viewing the trial record in the light most favorable to the verdict, there is no legally sufficient evidentiary basis for a reasonable jury to have found for the prevailing party." *Mato v. Baldauf*, 267 F.3d 444, 450-51 (5th Cir. 2001) (quotation marks and citations omitted). We find that Johnson failed to do so.

## III

To prove a First Amendment retaliation claim under § 1983, a plaintiff must show that (1) he suffered an adverse employment action, (2) his speech involved a matter of public concern, (3) his interest in commenting on matters of public concern outweighed the government employer's interest in promoting efficiency, and (4) his speech motivated the adverse employment action. *Harris v. Victoria Ind. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999). The last element is one of causation: if the decision-maker who imposed the adverse employment action was not motivated by the speech, then the speech did not cause the adverse employment action. *See Beattie v.*

6

*Madison County Sch. Bd.*, 254 F.3d 595, 631(5th Cir. 2001).

It is undisputed that Johnson suffered an adverse employment action. Reporting sexual harassment is speech of "great public concern."[6] *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1269 (5th Cir. 1992). We therefore address only the last two elements of Johnson's First Amendment retaliation claim.

As to causation, only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983. See *Beattie*, 254 F.3d at 602, 603, 605. In *Beattie*, the plaintiff alleged that the principal and superintendent of the school in which she worked, in retaliation for her support of an opposing candidate for superintendent, recommended to the school board that she be discharged. *Id.* at 601. We found that even were the plaintiff's allegations true, the principal and the superintendent could not be liable under § 1983 if they did not make the final decision to discharge her, "no matter how unconstitutional their motives." *Id.* at 605. Fontenot was the final decision-maker, so only he could possibly be held liable under § 1983. Johnson presented no evidence of a conspiracy between Fontenot and any other defendant,

---

[6] Defendants argue that Johnson's speech was not protected because his allegations were motivated by personal animosity. To determine whether Johnson's speech related to a matter of public concern, we decide whether he spoke primarily in his role as a citizen or primarily in his role as an employee addressing matters only of private concern. *See Connick v. Myers*, 461 U.S. 138, 147 (1983); *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359 (5th Cir. 2000) (citing *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986)). We consider the content, form, and context of the speech, as revealed by the whole record. *See Connick,* 461 U.S. at 147-48. Johnson may have been motivated in part by a personal dispute with Watson, but "[a]n employee's speech may contain an element of personal interest and yet still qualify as speech on a matter of public concern." *Harris*, 168 F.3d at 222. The allegations in the initial complaint (signed by four employees) related to general matters of misconduct on the part of police supervisors, not to issues that impacted Johnson directly. More importantly, allegations of sexual harassment – the speech for which Johnson was ultimately fired – are always matters of public concern, even when made both as a citizen and as an employee. *Wilson*, 973 F.2d at 1269-70.

so the district court erred in allowing the jury to consider the liability of Watson, Clark, Armstrong, and Watts.

Fontenot's liability turns on the third element, the balance of interests. To determine whether a plaintiff's interest in speech outweighs the government's interest in promoting efficiency, we consider "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 570-73 (1968)). Johnson argues, however, that we established a *per se* rule in *Wilson* that so long as an allegation of sexual harassment is made in good faith, the balance of interests always favors the plaintiff. *See Wilson*, 973 F.2d at 1270. To the extent to which *Wilson* implies such a per se rule, it has been modified by intervening Supreme Court precedent.

The landscape of § 1983 First Amendment retaliation actions shifted in 1994 with the Supreme Court's decision in *Waters v. Churchill*, 511 U.S. 661 (1994) (plurality opinion). The Court held that where the content of an employee's speech is disputed, a court applying the *Connick* test for matters of public concern must look to the facts as the defendant reasonably found them to be rather than the facts as they actually were. *Id.* at 677. In *Waters*, the employer was presented two widely-varying accounts of the plaintiff's speech; the content of the speech was a matter of public concern if the plaintiff's version was believed, but it was not a matter of public concern if the report of two other employees was believed. *Id.* at 664-66, 679-80. The Court found that if the employers, after conducting a reasonable fact-finding inquiry, "really did

8

believe [the other workers'] story, and fired [the plaintiff] because of it, they must win."[7] *Id.* at 679-80. It also found that the employer (even though it might have been wrong) reasonably believed the speech was disruptive, so the balance of interests analysis also favored the employer. *Id.* at 681.

The Court's reasoning in *Waters* was based largely on its concern that government employers not be bound by strict evidentiary rules when making employment decisions. *Id.* at 675-76. It noted that "[w]e have never held that it is a violation of the Constitution for a government employer to discharge an employee based on substantively incorrect information." *Id.* at 679. Rather, government employers, like other employers, may rely on hearsay and personal credibility determinations in deciding what was actually said. *Id.* at 676. Following *Waters*, we held that government employers are not required to resolve contradictory testimony in favor of the disciplined employee or to make personnel decisions through methods that mirror court procedures. *Gonzales v. Dallas County, Tex.*, 249 F.3d 406, 412 (5th Cir. 2001).

We therefore consider the facts as Fontenot reasonably found them to be. Fontenot properly relied on Watts's independent investigation, since he had no reason to suspect that Watts

---

[7] Similarly, in a case applying the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, we held that in cases in which an employee is fired based on an allegation of sexual harassment,

> the validity of the initial complaint is not the central issue, because the ultimate falseness of the complaint proves nothing as to the employer, only as to the complaining employee. The real issue is whether the employer reasonably believed the employee's allegation and acted on it in good faith, or to the contrary, the employer did not actually believe the co-employee's allegation but instead used it as a pretext for an otherwise discriminatory dismissal. Thus, the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.

*Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165-66 (5th Cir. 1993).

9

did anything other than report what he was told.[8] Given Clark's, Armstrong's, and Gendusa's denials of sexual harassment; Watts's report stating that he thought Johnson was lying; Johnson's admitted anger at Watson based on his demotion; and Johnson's failure to present *any* evidence in his own support even when explicitly invited to do so, Fontenot reasonably found the facts to be that Johnson was lying and that he had fabricated the sexual harassment allegations.

We also consider whether Watts's investigation was biased, because if the final decision-maker merely "rubber stamps" an evaluation made by a subordinate, then the subordinate's improper motive may be imputed to the decision-maker.[9] *See Rios v. Rossotti*, 252 F.3d 375, 382 (5th Cir. 2001). Johnson argues that Watts was biased by his supervisor's comment that he did not believe the allegations. Johnson presented no evidence, however, that Watts's supervisor pressured Watts to reach any particular conclusion or that he had a history of attempting to influence Watts's investigations. Johnson further argues that Watts's failure to interview his potentially corroborating witness shows that Watts conducted a sham investigation calculated to find that Johnson had lied. Watts, however, was entitled to limit his investigation and to make a credibility determination against Johnson. *See Waters*, 511 U.S. at 676, 680 (holding that a government employer may make credibility determinations and that its failure to interview additional witnesses who would have supported the plaintiff's claim was immaterial as "[m]anagement can only spend so much of their time on any one employment decision"). When compared to the overwhelming evidence Watts had that Johnson fabricated the allegations,

---

[8] The evidence showed that Fontenot's department had over 1,700 employees.

[9] It is not clear whether Fontenot merely rubber-stamped Watts's report, since Fontenot provided Johnson an opportunity to present evidence directly to him. As we find no evidence of improper motive, we need not resolve this question.

10

Watts's supervisor's comment and Watts's failure to interview another witness do not amount to a sufficient evidentiary basis from which a jury could reasonably believe that Watts was biased by any improper motive. There is therefore no improper motive that could be imputed to Fontenot.

We find that the balance of interests clearly weighs in favor of Fontenot. There is nothing in the record to belie a reasonable belief by Fontenot that Johnson's allegations against his supervisor and attempts to pressure Clark and Armstrong to change their stories were disruptive of discipline, harmony, and general working relationships. As the decision-maker, Fontenot's actions were reasonable and his reliance on Watts's investigation and conclusions was reasonable. Likewise, given the accounts provided to Watts by the parties involved and the information gleaned by Watts, his conclusions were reasonable if not compelled. If in fact either Fontenot or Watts misjudged the situation, such misjudgment does not rise to the level of a violation of Johnson's constitutional free speech rights. Johnson presented no evidence that Fontenot or Watts was motivated by a desire to curtail or to penalize the exercise of Johnson's constitutionally protected rights. In such a situation, "we must presume that official action was regular and, if erroneous, can best be corrected in other ways." *Bishop v. Wood*, 426 U.S. 341, 350 (1976).

## IV

For the reasons stated above, the judgment of the district court is VACATED and the case REMANDED to the district court for entry of judgment in favor of the defendants.

Inasmuch as we have determined that the defendants are not liable on Johnson's § 1983 claim, we VACATE the award of attorney's fees, which were predicated on Johnson's claims.

JUDGMENT VACATED AND REMANDED TO THE DISTRICT COURT WITH INSTRUCTIONS.

11