LOUIS GUIROLA, JR., UNITED STATES DISTRICT JUDGE
BEFORE THE COURT is the [46] Motion for Summary Judgment filed by Defendants City of Madison, Mississippi ("the City") and Mayor Mary Hawkins Butler. The Motion argues that Plaintiff Beverly Smith's sole remaining claim for First Amendment retaliation under 42 U.S.C. § 1983 should be dismissed because she has failed to establish either 1) a violation of a clearly established constitutional right or 2) that any city policy was the moving force before behind any such constitutional violation. The parties have fully briefed the Motion. Having considered the submissions of the parties, the record, and relevant law, the Court finds that Mayor Butler is entitled to qualified immunity, but the plaintiff has stated a cognizable "cat's paw" claim against the City.[1] Accordingly, Defendants' [46] Motion for Summary Judgment will be granted in part and denied in part.
I. BACKGROUND
This case, which is brought pursuant to 42 U.S.C. § 1983, was removed from the Circuit Court of Madison County, Mississippi on January 8, 2018. Plaintiff Beverly Smith claims that she was unlawfully terminated from her position as office manager for the Department of Public Works for the City of Madison, Mississippi. According to Smith Mayor Mary Hawkins Butler fired her because the Mayor believed that Smith was campaigning for, or otherwise publicly supporting Gerald Steen, a Supervisor on the Madison County Board of Supervisors and a political rival of the Mayor. Smith says that, although she did not actually support or campaign for Gerald Steen, the Mayor believed she did and fired her because of it. Smith asserts that her termination violated her right to free speech under the First Amendment.
On July 12, 2018, Defendants the City and Mayor Butler filed the instant Motion for Summary Judgment. The Motion argues that Defendants are entitled to summary *660 judgment for several reasons: 1) Smith has failed to allege that she engaged in speech, 2) any speech in which Smith engaged was unprotected, 3) Smith fails to identify a City policy or practice that served as the moving force behind any alleged constitutional violation, and 4) Mayor Butler is entitled to qualified immunity from the claim against her individually. Smith contests each of these suppositions, maintaining that the law recognizes her claim and that she has put forward sufficient competent evidence of her claims to defeat summary judgment.
II. DISCUSSION
a. Summary Judgment Standard
Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Little v. Liquid Air Corp. , 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).
"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Royal v. CCC & R Tres Arboles, L.L.C. , 736 F.3d 396, 400 (5th Cir. 2013) (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). If the evidence presented by the nonmovant " 'is merely colorable, or is not significantly probative,' summary judgment is appropriate." Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co. , 671 F.3d 512, 516 (5th Cir. 2012) (quoting Anderson , 477 U.S. at 249, 106 S.Ct. 2505 ). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. RSR Corp. v. Int'l Ins. Co. , 612 F.3d 851, 857 (5th Cir. 2010).
b. Analysis
42 U.S.C. § 1983 provides a cause of action for the violation of an individual's rights secured by the Constitution or laws of the United States by a person acting under color of state law. Smith's § 1983 claim in this case is premised upon the First Amendment. "With a few exceptions, the Constitution prohibits a government employer from discharging or demoting an employee because the employee supports a particular political candidate." Heffernan v. City of Paterson, N.J. , --- U.S. ----, 136 S.Ct. 1412, 1417, 194 L.Ed.2d 508 (2016). "The exceptions take account of 'practical realities' such as the need for 'efficiency' and 'effective[ness]' in government services." Id. (alteration in original) (citations omitted).
To prevail on a § 1983 First Amendment retaliation claim, a public employee must establish the following: "(1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) her speech motivated the employer's adverse action." Modica v. Taylor , 465 F.3d 174, 180 (5th Cir. 2006). "If the plaintiff carries this burden, then the defendant must show, by a preponderance of the evidence, that it would have taken the same action against the plaintiff even in the absence of the protected conduct."
*661 Lukan v. N. Forest ISD , 183 F.3d 342, 346 (5th Cir. 1999) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle , 429 U.S. 274, 283-87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) ; Brady v. Hous. Indep. Sch. Dist. , 113 F.3d 1419, 1423 (5th Cir. 1997) ). Finally, a plaintiff can rebut the defendant's showing with evidence that its "ostensible explanation for the discharge is merely pretextual." Coughlin v. Lee , 946 F.2d 1152, 1157 (5th Cir. 1991).
1. The Mayor is Entitled to Qualified Immunity
"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan , 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald , 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ). Accordingly, a government official is entitled to qualified immunity unless (1) the plaintiff's evidence is sufficient to show a violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the official's alleged misconduct. Id. at 232, 129 S.Ct. 808 (citing Saucier v. Katz , 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ). The issue of qualified immunity may be resolved on basis of either prong, and the Court has discretion to decide which of the two prongs should be addressed first. See id. at 236, 129 S.Ct. 808
The relevant disagreement between the parties on the issue of qualified immunity lies with whether the sued decisionmaking official (the Mayor) need be the final decisionmaker and/or final policymaker in order to be liable. The parties agree that the Mayor is not the final decisionmaker on city personnel issues. Rather, the Mayor makes a recommendation that the Board of Alderman ("the Board") can either accept or reject. Thus, the Board is the final decisionmaker. See Miss. Code Ann. § 21-3-5. Whether a nonfinal decisionmaker can be individually liable for first amendment retaliation remained an unsettled question in the Fifth Circuit before the court's June 2018 decision in Sims v. City of Madisonville , 894 F.3d 632 (5th Cir. 2018). Prior to Sims , in Culbertson v. Lykos , 790 F.3d 608 (5th Cir. 2015), the Fifth Circuit recognized the tension in the circuit's relevant caselaw and accordingly resolved the qualified immunity issue before the court on "clearly established" grounds. 790 F.3d at 627.
While numerous Fifth Circuit cases have instructed that only final decisionmakers may be found liable for First Amendment retaliation, e.g. Johnson v. Louisiana , 369 F.3d 826, 831 (5th Cir. 2004), " Culbertson noted that our first case to address the issue[ - Jett v. Dallas Independent School District , 798 F.2d 748, 758 (5th Cir. 1986), aff'd in part, remanded in part on other grounds , 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) -]'required only that a plaintiff show "an affirmative causal link" between a school principal's recommendation to reassign an athletic director and the school district's decision to do so.' " Sims , 894 F.3d at 639 (quoting Culbertson , 790 F.3d at 626 ).
"In Jett , it did not matter that the individual defendant had no authority to make the actual transfer decision." As our earliest decision addressing this question, Jett controls. Jett also has the virtue of being right. As numerous courts of appeals have recognized, individual liability for a government official who violates constitutional rights, including First Amendment ones, turns on traditional tort principles of "but-for" causation.
Id. (citations omitted).
The Sims panel explained that uncertainty on this point "unwittingly" developed *662 out of the opinion in Beattie v. Madison County School District , 254 F.3d 595 (5th Cir. 2001) :
A school secretary brought suit alleging she was fired for opposing the superintendent's reelection. Although she first sued not just the school district but also the superintendent and principal in their individual capacity, by the appeal she had abandoned claims against the individuals. So the focus of the appeal was on the question of municipal liability, which attaches only if final decisionmakers are liable. The unconstitutional motives of the principal and superintendent who recommended the termination were not attributed to the school board that made the final decision because the board did not know about the plaintiff's First Amendment activity.
Not recognizing that Beattie was only confronting Monell liability, a later case involving individual defendants read Beattie for the principle that "only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983." Johnson v. Louisiana , 369 F.3d 826, 831 (5th Cir. 2004). In reversing a verdict against a supervisor who retaliated against a subordinate for complaining about sexual harassment, Johnson ignored Jett 's contrary and precedential position that an individual is liable for First Amendment retaliation if her unlawful conduct is a link in the causal chain that resulted in the plaintiff's firing.
Id. at 640 (citations omitted).
Cases following Beattie and Johnson have imposed a causation standard that is more stringent than Jett 's"but-for" causation standard for nonfinal decisionmakers because they "mistakenly characterized the question as whether the nondecisionmaker can be liable under a cat's paw theory of imputed liability. That turns cat's paw liability on its head, and is another example of relying on the law of employer liability for a question of employee liability." Id. (emphasis in original). Because § 1983"applies to individuals[,] the question is not whether the [the City] is liable for carrying out the ill-motivated actions of the [official]; it is whether the [official his/her]self can be liable for having unlawful motives that caused the firing." Id. at 640-41.
Sims makes clear that the city official, such as a Mayor, need not be a final decisionmaker or policymaker in order to be found individually liable. However, this issue had not been clearly established when Smith was terminated. Id. at 641. Even assuming that the Plaintiff can present facts from which a jury could find a constitutional violation, Mayor Butler is entitled to qualified immunity because it was not clearly established that she could be subject to individual liability for causing Smith's termination. Id.
2. Smith Has Articulated and Adequately Supported a Claim Against the City
The City argues (1) that Smith fails to state a claim for violation of her free speech rights under the First Amendment, (2) that any speech in which Smith says she engaged was unprotected, and (3) that Smith fails to identify a policy or practice of the City as the moving force behind any First Amendment violation. Because the Court finds these arguments to be without merit, the City is not entitled to summary judgment.
In the present case, Smith alleges not that she actually engaged in speech, but that the Mayor thought Smith engaged in speech and fired her for it. Smith asserts that the Mayor believed Smith had campaigned for or otherwise publicly supported Gerald Steen. The Supreme Court *663 held in Heffernan v. City of Patterson that a government official's demotion of a public employee on the basis of a mistaken belief that the employee supported a particular mayoral candidate deprived the employee of his First Amendment right. See 136 S.Ct. at 1416. Thus, the employee needed only to establish the official's improper motive notwithstanding the factual mistake. Id. at 1419. Despite Defendants' arguments to the contrary, Smith's claim seems to fall squarely within the circumstances recognized by Heffernan as actionable. Smith does not assert, as Defendants' suggest, a mistaken-belief freedom of association claim. Cf. NAACP v. State of Ala. ex rel. Patterson , 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (noting that the freedom of association contemplates an individual's right to freely associate "for the advancement of beliefs and ideas"); Burnside v. Kaelin , 773 F.3d 624, 625-26, 629 (5th Cir. 2014) (noting that the basis of the plaintiff sheriff sergeant's association claim was his chairmanship of a law enforcement political action committee that did not endorse the current Sheriff's bid for reelection).
The Court turns next to whether Smith's believed speech that allegedly motivated the Mayor's decision would be considered protected speech. Speech is protected when, as a whole, it relates to the public concern. See Modica , 465 F.3d at 180. "Whether the speech at issue is on a matter of public concern is a question of law that must be determined by the court." Id. (quoting Salge v. Edna Indep. Sch. Dist. , 411 F.3d 178, 184 (5th Cir. 2005) ). But "before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of her public job." Davis v. McKinney , 518 F.3d 304, 312 (5th Cir. 2008) (quoting Mills v. City of Evansville , 452 F.3d 646, 647 (7th Cir. 2006) ). "Only when government penalizes speech that a plaintiff utters 'as a citizen' must the court consider the balance of public and private interests...." Id. (quoting Mills , 452 F.3d at 647-48 ). "Activities undertaken in the course of performing one's job are activities pursuant to official duties and not entitled to First Amendment protection." Id. at 313.
On this point, Defendants argue only that the Court should find a different motivation for the Mayor's decision to terminate Smith's employment - Smith's rude manner of interacting with the citizens of Madison - than the one advanced by Smith. Managerial discipline is certainly an important employer interest, but this interest is not reflected in the basis for termination Smith alleges. Smith testified at her deposition that Mayor Butler accused her of supporting Gerald Steen and campaigning against the Mayor in a conversation had at city hall on the day after the mayoral election in 2016. The Mayor, in her testimony, denied that she made this specific accusation, but acknowledged that the same referenced conversation occurred. Smith also testified that the Mayor and Gerald Steen were political rivals and that the Mayor disliked Gerald Steen. These statements find support in the Mayor's own deposition testimony. The Mayor testified that she thought Gerald Steen and Smith were trying to sabotage her campaign for mayor in order to strengthen Gerald Steen's future reelection campaign for county supervisor by damaging the Mayor's political goodwill. But the Mayor's testimony explicitly denied that any sabotage by Smith was the reason for her firing.
Whether the basis for Smith's termination was in fact the Mayor's mistaken perception that Smith was publicly supporting Gerald Steen is a disputed issue of fact that the Court may not resolve on summary judgment. If Smith's testimony *664 is accepted as true, the Mayor believed that Smith had spoken as a citizen (expressing public support for another public figure was entirely unrelated to Smith's job at the Department of Public Works) and on matters of public concern (the merits of the positions expressed by public figures and political candidates is of quintessential public concern).
Finally, the City argues that Smith has failed to identify any policy or custom that was the moving force behind the alleged violation of her First Amendment rights. Municipal liability under § 1983 may not be found on a theory of respondeat superior, but instead must be premised upon "some official action or imprimatur." Valle v. City of Hous. , 613 F.3d 536, 541 (5th Cir. 2010) (quoting Piotrowski v. City of Hous. , 237 F.3d 567, 578 (5th Cir. 2001) ). For a municipality to be held liable under § 1983, there must be "proof of three elements: a policymaker; an official policy or custom; and a violation of constitutional rights whose 'moving force' is the policy or custom." Piotrowski , 237 F.3d at 578 (citing Monell v. Dep't of Soc. Servs. , 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ). A policy includes a "decision that is officially adopted ... by an official to whom the lawmakers have delegated policy-making authority." Pineda v. City of Hous. , 291 F.3d 325, 328 (5th Cir. 2002) (citation omitted). A single decision, such as the decision to terminate a municipal employee, may therefore create municipal liability only where the decision is made by a final policymaker or the improper motive can be imputed to the final policymaker. See Bolton v. City of Dallas , 541 F.3d 545, 548 (5th Cir. 2008) ; Woodard v. Andrus , 419 F.3d 348, 352 (5th Cir. 2005) ; Beattie , 254 F.3d at 603.
As previously noted, the parties agree that the Board is the final policymaker with regard to employment decisions. The parties also agree that the Mayor recommended Smith's termination to the Board, which accepted the Mayor's recommendation. Furthermore, the parties agree that the Mayor's recommendation contained no explanation or reasoning for the decision; Smith's termination was effected through a payroll change form submitted by the Mayor. In general, "[w]ithout a showing that [the Board] had actual knowledge of the alleged improper basis of [the Mayor's termination] recommendation, [the Board] cannot be liable for the alleged retaliation." Beattie , 254 F.3d at 604. However,
[t]here is an exception to this rule where the final policymaker's decision is merely a "rubber stamp." If an employee can demonstrate that the subordinate's evaluation was tainted by an illegal intent and that it had sufficient influence or leverage over the ultimate decisionmaker, the motives of the subordinate become relevant.
Id. at 604 n.14 (citing Rios v. Rossotti , 252 F.3d 375, 381-82 (5th Cir. 2001) ).
The Beatti panel relegated discussion of this exception to a footnote because the plaintiff had not come forward with any evidence to support this theory. See id. Unlike the plaintiff in Beatti , Smith has presented some evidence from which a factfinder could infer that the Board merely "rubber stamped" the Mayor's employment decisions. The Mayor recommended Smith's termination by means of payroll change form containing no explanation for the decision. The Minutes of the August 15, 2017 meeting of the Mayor and the Board, during which Smith's termination became final, indicate that the Board accepted the termination of multiple municipal employees and do not reflect a discussion of the reasons for termination. The Mayor's testimony confirms that she did not discuss her reasons for recommending the termination of Smith or three other *665 Department of Public Works employees and that personnel terminations were typically carried out this way - by means of an explanation-less payroll change.
Accordingly, the Court finds that Smith has produced sufficient evidence from which a properly instructed jury could find that the Board merely rubber stamped the Mayor's allegedly tainted termination recommendation. Cf. Rios , 252 F.3d at 382 ("Where an evaluation is the sole basis or comprises a substantial basis on which the decision maker acts, the evaluation may often constitute sufficient influence to fall under the 'rubber stamp' exception."). Summary judgment is therefore denied as to the Plaintiff's claim against the City.
IT IS THEREFORE ORDERED AND ADJUDGED that the [46] Motion for Summary Judgment filed by the City of Madison, Mississippi and Mayor Mary Hawkins Butler is GRANTED IN PART AND DENIED IN PART . Plaintiff's claim against Mayor Mary Hawkins Butler is hereby dismissed.
SO ORDERED AND ADJUDGED this the 23rd day of October, 2018.

Plaintiffs use a cat's paw theory of liability when they cannot show that the decisionmaker-the person who took the adverse employment action-harbored any retaliatory animus. Under this theory, a plaintiff must establish that the person with a retaliatory motive somehow influenced the decisionmaker to take the retaliatory action. "Put another way, a plaintiff must show that the person with retaliatory animus used the decisionmaker to bring about the intended retaliatory action." Zamora v. City of Houston , 798 F.3d 326, 331 (5th Cir. 2015).