# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 99-50873
Summary Calendar

_____

BOS DAIRY, L.C.; DESERT VIEW DAIRY, L.C.; RIO GRANDE DAIRY, L.C.,

Plaintiffs-Appellants,

VERSUS

UNITED STATES DEPARTMENT OF AGRICULTURE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

May 1, 2000

Before SMITH, BARKSDALE, and
PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Bos Dairy, L.C., Desert View Dairy, L.C., and Rio Grande Dairy, L.C. (collectively "Dairy Producers") appeal a summary judgment in favor of the United States Department of Agriculture ("USDA"). We affirm.

I.

Dairy Producers, who operate farms in El Paso County, Texas, contest the district court's interpretation of two repealed statutory sections, the Dairy Price Reduction Program of 7 U.S.C. § 1446e(h)(2) (1996) and the Dairy Refund Provisions of *id.* § 1446e(h)(3) (1996).[1] Under § 1446e, the USDA supported the domestic dairy industry by acting as a

---

[1] These provisions were repealed in 1996. *See* Pub. L. No. 104-127, tit. I, § 141(g), 110 Stat. 915 (1996).

buyer of last resort for storable dairy products[2] and, to offset the cost of the program, assessed producers on the milk they produced, then refunded part or all of that assessment to those producers that did not increase their marketings from year to year. *See* § 1446e.

In 1995, Dairy Producers marketed a portion of their milk production in Mexico. They did not report this milk for purposes of the assessment, and they applied for and received a refund by not including the milk in their overall 1995 marketings. When USDA learned of the milk marketed in Mexico, it requested a return of the refund and assessed Dairy Producers for that milk.

Dairy Producers sought administrative relief, arguing that milk marketed outside the United States is not relevant to either program. Failing to achieve an administrative remedy, Dairy Producers sought relief in district court, which entered summary judgment in favor of USDA.

## II.

We review a summary judgment *de novo*, employing the same standards as did the district court. *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 205 (5th Cir.), *cert. denied*, 119 S. Ct. 509 (1998). The district court found the contested statutory language to be unambiguous. If, using traditional tools of statutory construction, a statute is unambiguous, we give effect to that unambiguous interpretation. *See Chevron, U.S.A., Inc., v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984); *Rublee v. Fleming*, 160 F.3d 213, 215 (5th Cir. 1998).

Section 1446e provided:

(a) In general

During the period beginning on January 1, 1991, and ending on December 31, 1996, the price of milk produced in the 48 contiguous States shall be supported as provided in this section.

. . .

(g) Excess purchases

(1) In general

In order to offset any cost to the Commodity Credit Corporation associated with the purchase . . . of milk and the products of milk in excess of 7,000,000,000 pounds . . . the Secretary shall, if necessary, provide for a reduction to be made in the price received by producers for all milk produced in the 48 contiguous States and marketed by producers for commercial use.

(2) Calculation

. . . [T]he amount of reduction in the price received by producers in such following calendar year shall be an amount per hundredweight calculated by dividingSS

---

[2] While cows produce more milk in the spring, and less in the fall, demand for milk follows an opposite trend. Therefore, sufficient fall supplies equate to excess spring supplies. Milk perishes too quickly to store, but it can be stored by conversion into butter, powder, and cheese. In the Agricultural Act of 1949, 63 Stat. 1051, Congress began to support the domestic dairy industry by becoming the buyer of last resort at fixed prices for butter, powder, and cheese.

(A) the cost of the purchases . . . in excess of 7,000,000,000 pounds . . . by

(B) the total quantity of hundredweights of milk the Secretary estimates will be produced and marketed in the United States for commercial use in such following calendar year.

. . .

(h) Reduction in price received

(1) In general

Beginning January 1, 1991, the Secretary shall provide for a reduction in the price received by producers for all milk produced in the 48 contiguous States and marketed by producers for commercial use, in addition to any reduction in price required under subsection (g) of this section.

(2) Amount

The amount of the reduction under paragraph (1) . . . shall beSS

. . .

(3) Refund

The Secretary shall provide a refund of the entire reduction under paragraph (2) . . . if the producer provides evidence that the producer did not increase marketings in the calendar year that such reduction was in effect when compared to the immediately preceding calendar year.

III.

USDA contends that milk produced in the forty-eight contiguous states and marketed outside the United States is included in "milk produced in the 48 contiguous States and marketed by producers for commercial use." 7 U.S.C. § 1446e(h)(1) (1996). The relevant USDA Regulations reflect this interpretation. *See* 7 C.F.R. §§ 1430.340-.341 (1998). Dairy Producers disagree, arguing that the language should be considered to read "milk produced *and marketed for commercial use* in the 48 contiguous States." The parties likewise dispute the meaning of "marketings" in subsection (h)(3), which provides a refund of the subsection (h) assessment for those producers that do not increase their marketings above that of the preceding year.

A literal reading of the contested subsection (h)(1) phrase unambiguously favors USDA's interpretation, because Dairy Producers' interpretation requires relocating a portion of the statutory text. Dairy Producers therefore argue that their interpretation is supported by a holistic interpretation including subsection (g).

In that subsection, an additional assessment is structured to offset costs from predicted excess government purchases of dairy products. The predicted excess cost is offset by a "reduction to be made in the price received by producers for all milk produced in the 48 contiguous States and marketed by producers for commercial use." 7 U.S.C. § 1446e(g)(1) (1996). Thus, this reduction applies to the same group affected by the contested subsection (h) reduction.

The amount of the subsection (g) reduction, however, is calculated using "the total quantity . . . of milk the Secretary estimates will be produced and marketed in the United States for commercial use in such following calendar

year." 7 U.S.C. § 1446e(g)(2)(B). Thus, for purposes of the subsection (g) *calculation*, Dairy Producers' milk marketed in Mexico is irrelevant.

This distinction does not alter the unambiguous nature of the subsection (h) language. Because the subsection (g) assessment is meant to predict and directly offset excess USDA purchases of milk products, the calculation of the amount of that assessment does not include milk products predicted to be marketed outside the United States. The subsection (g) assessment is still levied on such milk, however, because, as subsection (a) notes and USDA persuasively argues, § 1446e supported the production of all milk produced in the continental United States wherever it might be sold.

By setting a price floor for milk products sold within the contiguous states, the USDA gave producers the option, irrespective of whether they exercised it, of making milk into products that would be purchased by the USDA. Therefore, consideration of subsection (g) does not alter the plain meaning of the subsection (h) language. Further, the use of the phrase "produced and marketed in the United States" in subsection (g) demonstrates that when it wanted to, Congress knew how to designate solely milk marketed in the United States. *See Russello v. United States*, 464 U.S. 16, 23 (1983).

Dairy Producers further contend that USDA has taken inconsistent positions on this issue when interpreting similar text in related statutory provisions. Not only do Dairy Producers fail to produce any credible

evidence of such inconsistency,[3] but they fail to refute USDA's evidence that it has consistently interpreted the disputed statutory language to include milk marketed outside the United States.

A previous price reduction program instructed the Secretary of Agriculture to "provide for a reduction to be made in the price received by producers for all milk produced in the United States and marketed by producers for commercial use." 7 U.S.C. § 1446(d)(2)(A) (1988). In language identical to that currently adopted by USDA, its regulations implementing this reduction included marketing outside the United States. *See* 7 C.F.R. § 1430.341(j)(2)(ii) (1988).

When Congress enacted § 1446e(h) in 1990, it used language identical to that the Secretary had previously interpreted as applying to milk marketed outside the United States. This implicit Congressional acceptance is consistent with our conclusion that USDA's interpretation of the disputed statutory provisions is correct. *See United States v. Rutherford*, 442 U.S. 544, 554 n.10 (1979).

We therefore decide that the language "all milk produced in the 48 contiguous States and marketed by producers for commercial use," § 1446e(h)(1), and "the producer did not

---

[3] Dairy Producers' argument concerning the Dairy Termination Program, which allowed farmers to contract out of the dairy producing business, is irrelevant. Permanently exporting one's cattle is markedly different from exporting milk produced by that cattle. The former permanently removes the government's burden of support, while the latter indirectly takes advantage of the price floor that support maintains.

increase marketings," § 1446e(h)(3), required Dairy Producers to include milk marketed in Mexico in determining the price reduction for which Dairy Producers were assessed pursuant to § 1446e(h)(1), and should have been included in determining whether Dairy Producers qualified for a § 1446e(h)(1) assessment refund pursuant to § 1446e(h)(3).

## IV.

The district court awarded USDA interest on Dairy Producers' debts. Because USDA regulations permit the agency to waive such interest on debts that are appealed, *see* 7 C.F.R. § 1403.10(b), Dairy Producers argue that such interest may not be assessed without a hearing. Not only did Dairy Producers fail to make this argument before the district court, but the argument is made without legal citation and has no merit. That an agency has discretion to waive interest logically does not mean that such agency must conduct a hearing before *not* waiving that interest.

AFFIRMED.