# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 14, 2013

No. 12-10131

Lyle W. Cayce
Clerk

JAMES CLIFFORD SPENCE, also known as James Spence,

Plaintiff-Appellant

v.

WALLACE NELSON, Chaplain III, Region VI, also known as Wallace Nelson,
III; NFN SHABAZZ, Chaplain; BILL PIERCE, Director of Chaplaincy; TERESA
CAMACHO, Mailroom Supervisor, also known as FNU Camacho,

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:10-CV-95

Before DAVIS, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

James Clifford Spence, Texas prisoner # 712697, appeals the district
court's dismissal of his civil rights complaint against Wallace Nelson, Chaplain
III, Region VI; Chaplain Shabazz; Bill Pierce, Director of Chaplaincy; and Teresa
Camacho, French M. Robertson Unit Mailroom Supervisor. He alleged that the
defendants instituted an unpublished mailroom policy prohibiting inmates from

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 12-10131

receiving packages from Iran and the Middle East.  Spence, a Shia Muslim, argued that the policy substantially burdened the practice of his religion in violation of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc.  He also argued that the policy violated his First Amendment right to free speech and deprived him of his Fourteenth Amendment right to due process of law.  Spence sought injunctive and declaratory relief, as well as compensatory, nominal, and punitive damages.  The district court granted the defendants' motion for summary judgment, denied Spence's cross motion for summary judgment, and dismissed the complaint with prejudice.

Spence does not contend that the district court erred in dismissing (1) his claims for injunctive relief under the RLUIPA and 42 U.S.C. § 1983; (2) his RLUIPA claims against the defendants in their individual capacities; and (3) his claims for monetary damages under § 1983 and the RLUIPA against the defendants in their official capacities.  Further, aside from noting that there is a circuit split on the issue of whether 42 U.S.C. § 1997e(e) applies to prisoners' First Amendment claims, Spence does not contend that the district court erred in dismissing his § 1983 claims for compensatory damages against the defendants in their individual capacities.  These issues are therefore abandoned. *See Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

Spence contends that the district court abused its discretion when it denied him leave to amend his complaint.  Although Spence filed an amended complaint more than 21 days after the defendants' answer, he did not obtain the defendants' written consent or request leave to do so, either in a formal motion or within the body of the amended complaint.  *See* Fed. R. Civ. P. 15(a). Therefore, the district court did not abuse its discretion in failing to consider Spence's amended complaint.  *See U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003) ("[F]ailing to request leave from the court when

leave is required makes a pleading more than technically deficient. The failure to obtain leave results in an amended complaint having no legal effect.").

He also contends that the district court abused its discretion when it denied his motion for the appointment of counsel. However, Spence failed to demonstrate the extraordinary circumstances necessary to justify the appointment of counsel. *See Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982). Therefore, the district court's denial of his motion for the appointment of counsel was not an abuse of discretion. *See Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987).

Further, Spence contends that the district court abused its discretion when it denied his motion for leave to engage in discovery. He notes that we have held that limited discovery may be allowed prior to ruling on a qualified immunity claim and argues that his recovery from triple bypass surgery delayed his ability to engage in discovery. He also argues that he should have been allowed to conduct discovery regarding the "culture of rule-making" and lack of accountability within the Texas Department of Criminal Justice (TDCJ).

Because he was not granted leave to file his amended complaint, Spence cannot show that discovery regarding issues and defendants raised in that complaint would have created a genuine issue of material fact sufficient to defeat the defendants' summary judgment motion. *See Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001). Further, Spence cannot show how evidence of unauthorized rule making by other prison officials on issues unrelated to the mailroom's processing of inmate mail would have defeated the defendants' motion for summary judgment. *See id.* Finally, "because qualified immunity turns only upon the *objective* reasonableness of the defendant's acts, a particular defendant's subjective state of mind has no bearing on whether that defendant is entitled to qualified immunity." *Thompson v. Upshur Cnty., Texas*, 245 F.3d 447, 457 (5th Cir. 2001). Therefore, Spence has failed to show that the

No. 12-10131

district court abused its discretion when it denied his motion for leave to engage in discovery. *See Beattie*, 254 F.3d at 606.

As to the merits of his § 1983 and RLUIPA claims, Spence contends that the district court erred in dismissing his claims for declaratory relief. He argues that the defendants' voluntary cessation of the challenged policy did not render his claims for declaratory relief moot and that he was entitled to a declaratory judgment stating that the policy violated the RLUIPA and his First Amendment right to free speech.

The summary judgment evidence demonstrates that the mailroom policy prohibiting inmates from receiving packages from Iran is no longer in effect, and Spence has presented no evidence that the defendants' voluntary cessation of that policy was a sham or mere litigation posturing. *See Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd*, 131 S. Ct. 1651 (2011). Spence does not argue that the TDCJ's current policy violates the First Amendment or RLUIPA, the current policy can only be amended by the Texas Board of Criminal Justice, and Spence's assertion that the alleged violation is likely to recur is too speculative to avoid mooting the case. Therefore, the defendants' voluntary cessation of the challenged policy rendered Spence's claim for declaratory relief moot, and the district court did not err in granting the defendants' motion for summary judgment on this issue. *See Sossamon*, 560 F.3d at 325.

Spence also contends that the district court erred in dismissing his § 1983 claims for nominal and punitive damages against the defendants in their individual capacities. He argues that genuine issues of material fact exist as to whether the mailroom policy prohibiting inmates from receiving packages from Iran violated his First Amendment right to free speech and deprived him of his Fourteenth Amendment right to due process of law. Spence also argues that

4

genuine issues of material fact exist as to whether the defendants were entitled to qualified immunity.

We have recognized that the precise contours of a prisoner's First Amendment right to free speech are obscure. *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). Nevertheless, it is well-established that "prisoners and their correspondents enjoy the protections of the First Amendment except to the extent that prison regulations curtailing those protections are 'reasonably related to legitimate penological interests.'" *Prison Legal News v. Livingston*, 683 F.3d 201, 213 (5th Cir. 2012) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (holding that regulations affecting the sending of publications to inmates are valid if they are reasonably related to legitimate penological interests). The Supreme Court has also held that a prisoner's right to correspond, grounded in the First Amendment, "is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), overruled on other grounds by *Thornburgh*, 490 U.S. at 413-14. Thus, "the decision to censor or withhold delivery of [inmate mail] must be accompanied by minimum procedural safeguards." *Id*. at 417. Although Spence bears the burden of showing that the challenged policy, as applied, is not reasonably related to legitimate penological interests, the defendants "must do more . . . than merely show a formalistic logical connection between [the challenged policy] and a penological objective." *Prison Legal News*, 683 F.3d at 215 (internal quotation marks and citation omitted).

The summary judgment evidence states in the passive voice that Mail System Coordinators Panel Program Supervisor Jennifer Smith created the challenged policy after a series of meetings and conversations with various TDCJ employees, including defendants Pierce and Shabazz, during which she "was

advised that there were security problems with packages received from Iran." Although prison officials have a legitimate and often overriding penological interest in the security of inmates and guards, *Brewer*, 3 F.3d at 825, we cannot say that, on the existing record, no genuine issue of material fact exists as to whether the challenged policy was applied neutrally and whether it was rationally related to security interests, *see Thornburgh*, 490 U.S. at 414. For example, Smith swore in an affidavit that she had been advised of "security problems" with packages from Iran, but the record is devoid of evidence regarding the nature of those problems or why an absolute ban on all packages from Iran was required to adequately address the non-specific and unattributed security concerns – particularly given that Spence alleged that he received hundreds of books from Iran and the Middle East without incident. In addition, although the policy, on its face, banned all packages from Iran regardless of content, Spence alleged that officials used the policy to deny packages from Iran and other Middle Eastern countries in a way that may have disproportionately affected Muslim inmates. Because we find that there is a genuine issue of material fact as to the issues discussed above, we also find that there is a genuine issue of material fact as to whether the defendants were entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Therefore, the district court erred when it dismissed Spence's § 1983 claims for nominal and punitive damages against the defendants in their individual capacities. Accordingly, we vacate the district court's grant of summary judgment on these claims and remand the case to the district court for further proceedings consistent with this opinion. In light of the foregoing, we need not consider Spence's contention that the defendants' voluntary cessation of the challenged policy rendered him a prevailing party for purposes of 42 U.S.C. § 1988.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.