# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 25, 2013

No. 12-30788
Summary Calendar

Lyle W. Cayce
Clerk

JOSEPH CEDRIC SHELTON,

Plaintiff–Appellant

v.

BOARD OF SUPERVISORS OF SOUTHERN UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE; KASSIE FREEMAN; TONY CLAYTON; PATRICK
MAGEE; ERNIE HUGHES; SOUTHERN UNIVERSITY SYSTEM FOUNDATION,

Defendants–Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USCD No. 3:09-CV-968

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant, Joseph Shelton, filed suit against
Defendants–Appellees for claims stemming from his termination. His suit
alleged several claims against each Defendant, many of which were disposed of
through summary judgment motions. Ultimately, the only claims remaining
were for Title VII retaliation, § 1983 retaliation, and a Louisiana state law claim

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 12-30788

for abuse of rights. At the trial below, after Shelton rested his case, the district judge granted the Defendants' motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. Proceeding pro se, Shelton timely appealed the district court's grant of the motion. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Shelton started working for Southern University and Agriculture and Mechanical College ("the University") in 2005 in the Office of Admissions as an assistant to the director of recruiting. All of his positions with the University were non-tenured, at-will employment positions. In 2007, Shelton testified in a case filed by the then-University President, Dr. Slaughter, against Southern University and others, regarding complaints of sexual harassment lodged by female employees (the "Slaughter litigation"). In March 2009, Slaughter was terminated from his position as President.

In July 2009, Kassie Freeman ("Freeman") was named interim-President by the Board of Supervisors of the University (the "Board"). Within thirty days of her succession, she presented a reorganization plan to address budget concerns. When she first presented the plan to the Board, they voted to table it until the next meeting. After the next Board meeting, Tony Clayton ("Clayton"), the Board Chairman, directed several Board members to meet with Freeman's staff to see if job eliminations could be reduced. Ultimately, as payroll was a large percentage of the University's budget, the Board determined that layoffs had to be made. Almost a month after being presented the reorganization plan, the Board voted to approve it. As part of that plan, Shelton was provided a thirty-day notice of termination, pursuant to the Board-approved plan.

### B. Procedural History

Shelton filed suit on November 10, 2009, against the Board; Freeman; Clayton; Patrick Magee, a member of the Board ("Magee"); Southern University

2

No. 12-30788

System Foundation (the "Foundation"); and Ernie Hughes, Foundation interim-Director ("Hughes"), claiming that he was terminated in retaliation for his role in the separate Slaughter litigation against the University.

### a. Pre-Trial Dismissals

From June 2011 to January 2012, the district court ruled on several dismissal motions and motions for summary judgment. Because Shelton appeals only the district court's ruling on the Rule 50 motion, the parties who obtained dismissals apart from it are not proper parties to this appeal. This includes the Foundation and Hughes. All claims against the Foundation were dismissed by January 2012, seven months before trial. All claims against Hughes were dismissed based on a motion separate from the Rule 50 judgment before us now.

### b. Foundation Dismissed Before Trial

The Foundation is not a proper party to the appeal. Shelton brought seven claims against the Foundation.[1] On September 9, 2011, the district granted the Foundation summary judgment on five of Shelton's claims against the Foundation,[2] and dismissed with prejudice Shelton's retaliation conspiracy claim against the Foundation, leaving only the defamation claim pending against the Foundation. On January 10, 2012, the district court granted the Foundation's motion to dismiss with prejudice the defamation claim after a Louisiana state court issued a final judgment dismissing Shelton's identical defamation claim. The district court specifically stated that "[b]ecause no claims remain against the Foundation, it is excused from trial in this matter."

---

[1] The claims against the Foundation were as follows: (1) a Title VII retaliation claim under 42 U.S.C. § 2000e; (2) a retaliation claim under 42 U.S.C. § 1983; (3) a Louisiana statutory claim under the whistleblower statute, La. Rev. Stat. Ann. § 23:967; (4) a retaliation conspiracy claim under 42 U.S.C. § 1985; (5) a defamation claim; (6) an intentional infliction of emotional distress claim; and (7) an abuse of rights claim under Louisiana state law.

[2] The court granted summary judgment on the following claims: the Title VII retaliation claim, § 1983 retaliation, state law whistleblower claim, abuse of rights, and intentional infliction of emotional distress.

No. 12-30788

Admittedly, the language of the district court's post-trial judgment is over-inclusive, broadly dismissing Shelton's claims as to all defendants, including the Foundation. But by the time of trial the Foundation had already been dismissed from the action. Thus, the Foundation is not a party to Shelton's appeal.

### c. Hughes Dismissed On Res Judicata Grounds

Hughes is also not a proper party to the appeal. Shelton brought five claims against Hughes.[3] The district court dismissed all claims against Hughes, other than the defamation claim, in its September 9, 2011 order. Shelton does not appeal those dismissals.

Thus, by the time of trial, the only claim pending against Hughes was the defamation claim. But at trial, Shelton did not present evidence of defamation or even mention the claim. The district court's grant of the Rule 50 motion to dismiss those claims did not relate to Hughes. Instead, the trial court, after discussing its reasons for granting the Rule 50 motion, also stated it would grant Hughes' motion to dismiss, which was based on res judicata. The trial court signed two separate orders consistent with its announced reasoning.

The dismissal of the defamation claim against Hughes is unrelated to the Rule 50 dismissal that Shelton appeals. Shelton does not appeal the granting of the motion to dismiss the defamation claim, as his briefing is devoid of discussion on the defamation claim. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal." (citations omitted)). Hughes is not a proper party to this appeal.[4]

---

[3] Shelton brought claims for (1) retaliation under 42 U.S.C. § 1983; (2) retaliation conspiracy under 42 U.S.C. § 1985; (3) defamation; (4) intentional infliction of emotional distress; and (5) abuse of rights under Louisiana law.

[4] Even if the Foundation and Hughes were proper parties to the appeal, our affirmance of the district court's grant of judgment as a matter of law, discussed below, would dispose of the claims against them as well.

No. 12-30788

### d. Judgment as a Matter of Law Granted As to Board, Freeman, and Clayton

Ultimately, by the time of trial, the only claims still pending were as follows: a Title VII retaliation claim and Louisiana state claim for abuse of rights against the Board; a § 1983 retaliation claim and Louisiana state claim for abuse of rights against Freeman and Clayton.[5]

After Shelton rested three days into a jury trial, the Defendants moved for judgment as a matter of law under Rule 50 on the basis that Shelton had not presented any evidence that would allow a reasonable juror to find that his termination was a result of improper retaliation on the basis of his protected activity. After oral argument, during which Shelton was permitted a break to review the evidence, the district court granted the motion.

As to the § 1983 retaliation claim, the district court stated that Shelton's witnesses did not present evidence sufficient to go to a jury because there was no evidence presented that either Freeman or Clayton had any role in Shelton's termination. As to the Title VII claim, similarly, the district court held that Shelton presented no evidence that his role in the Slaughter litigation was a substantial or motivating factor in the Defendants' decision to terminate Shelton's position. Finally, as to the abuse of rights claim under Louisiana law, the district court found that there was no evidence that the Defendants' motives were to harm Shelton or that his termination otherwise violated "moral rules" or "fundamental fairness."

### II. JURISDICTION

Shelton seeks review of a final judgment of the district court. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

---

[5] The defamation claim against Hughes, discussed above, was also pending, but is not appealed.

No. 12-30788

## III. STANDARD OF REVIEW

This Court reviews de novo a grant of a motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (citation omitted). Judgment as a matter of law is proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. *Id.* (quoting Fed. R. Civ. P. 50(a)). This Court must draw all reasonable inferences in favor of the non-moving party. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). More specifically, this Court should give credence to the evidence favoring the non-moving party and any uncontradicted or unimpeached evidence supporting the moving party, to the extent such evidence comes from disinterested witnesses. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## IV. DISCUSSION

The issue before this Court is whether the district judge erred in granting judgment as a matter of law in favor of the Defendants with respect to Shelton's claims of Title VII retaliation, retaliation under § 1983, and abuse of rights under Louisiana law. We agree with the district court. Based on the evidence presented at trial, there is no legally sufficient evidentiary basis for a reasonable jury to find in favor of Shelton.

There are three elements to a prima facie case of retaliation under Title VII: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *See Evans v. City of Hous.*, 246 F.3d 344, 352 (5th Cir. 2001). Here, the only element at issue is whether Shelton established the necessary causal link.

Similar to Title VII, under a § 1983 retaliation claim, the plaintiff has the burden of proving that (1) the plaintiff suffered an adverse employment decision;

6

(2) the plaintiff's speech involved a matter of public concern; (3) the plaintiff's interest in commenting on matters of public concern outweighs the defendant's right in promoting efficiency; and (4) the plaintiff's speech motivated the adverse employment action. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001) (citation omitted). The only element at issue is the last.

Finally, under a Louisiana tort claim for abuse of rights, the plaintiff must prove one of the following: (1) the predominant motive for the defendant's exercise of a right is to cause harm; (2) that there is no legitimate motive for the exercise of the defendant's right; (3) exercising the right violates moral rules, good faith, or elementary fairness; or (4) the exercise of the right is for a purpose other than that for which it was granted. *Steier v. Heller*, 732 So. 2d 787, 791 (La. Ct. App. 1999) (citations omitted).

On appeal, Shelton raises three specific issues, none of which merits reversal. First, he argues that the district court should not have granted the Defendants' Rule 50 motion without giving him further opportunity to cure the deficiencies with his case. Specifically, he claims he did not get to fully examine Lawson, another Board member, and did not get to review trial transcripts. However, when asked by the district court, Shelton was unable to identify for the court how Lawson's testimony would help him oppose the Rule 50 motion. In fact, Lawson was not even present at the Board meeting during which the reorganization plan was approved. Even in his briefs before this Court, Shelton does not identify anything specific that Lawson would have provided, instead stating only that "nothing is really certain in litigation." He has not provided this Court or the district court with any indication of how specifically the additional witness would cure the deficiency. Further, two Board members testified that their votes were not influenced by the litigation. Thus, the district court did not err in ruling on the Rule 50 motion after Shelton rested his case-in-chief, notwithstanding Shelton's indication that he would cross-examine—or

even call as a witness—another Board member. Shelton does not explain his alleged error in reduced time at trial; we note the district court granted his request for a break to review evidence.

Second, Shelton argues that because trial had already commenced, any qualified immunity defense raised by Defendants "was waived once suit had gone to trial." Shelton's support for this novel argument is the Supreme Court's statement that because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Leaving aside that this argument is incorrect, Shelton's qualified immunity argument is moot. The district court did not base its holding on any qualified immunity claims made by Defendants. Instead, it held that Shelton failed to establish a causal link between his protected action and his termination. "There is no evidence that would allow this case to go to the jury that the plaintiff's exercise of his First Amendment rights in the Slaughter case was the—was a substantial or a motivating factor [in Shelton's termination]." The district court dismissed the abuse of rights claim and the Title VII claim on similar grounds. Finally, Shelton argues that, contrary to the district court's finding, there was ample evidence of a causal connection between his protected conduct and his adverse employment action. He states, mainly relying on a District of Connecticut opinion, that the issue of whether he established a causal connection was for the jury due to the "copious" evidence he provided.[6]

---

[6] Shelton cites a recent Fifth Circuit case as stating that "[w]here there is close timing between an employee's protected activity and an adverse employment action, retaliatory animus is established." Appellant's Br. at 27 (purporting to cite *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398 (5th Cir. 1999)). However, that sentence does not appear in *Shackelford*.

In fact, Shelton's citation misrepresents what *Shackelford* states, which is: "where there is a close timing between an employee's protected activity and an adverse employment action, the employer must offer 'a legitimate, nondiscriminatory reason that explains both the

No. 12-30788

Far from being "copious," the evidence is in fact scant. The three witnesses with decision-making authority that Shelton called testified that the reductions were motivated by budget concerns. One of the Board members Shelton called testified that there was no mention of the Slaughter litigation during the discussions about the reorganization plan. Slaughter, the outgoing President, told interim-President Freeman that she would have to make reductions in personnel to comply with budget reductions. Shelton offers no legally sufficient evidence to discredit or rebut the Defendants' argument that he was terminated in response only to budget issues.

Shelton's trial testimony further demonstrated the lack of evidence establishing a causal connection. There was a two-year lapse between his participation in the Slaughter litigation and the Board's reorganization leading to his termination. Moreover, between the two incidents, the Board approved a raise for Shelton. These facts undermine any allegation of a causal connection between his testimony and his termination. *See, e.g.*, *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002) (holding a several-year lapse and intervening positive evaluation undermined causal connection). Finally, interim-President Freeman gave Shelton an opportunity, as she did many employees, to share his vision for his role in her administration. He did not take advantage of the opportunity. He "pledged his loyalty" to her, but when asked about what he did for the University, walked out of her office.

Ultimately, no reasonable jury could conclude that retaliation was the reason for Shelton's termination.

---

adverse action and the timing.'" *Shackelford*, 190 F.3d at 408 (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)). Had a licensed attorney so blatantly misrepresented a case, he or she would likely be subject to sanctions. It seems that Shelton "borrowed" the language verbatim from another brief in a related matter. *See* Br. of Plaintiff–Appellant at *31, *Slaughter v. Atkins*, 396 F. App'x 984 (5th Cir. 2010). Even though Shelton is pro se, he has an obligation to not mislead the court.

No. 12-30788

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of judgment as a matter of law.