# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60506

United States Court of Appeals
Fifth Circuit

**FILED**

August 11, 2016

Lyle W. Cayce
Clerk

KRISTI DEARMAN,

      Plaintiff - Appellant

v.

STONE COUNTY SCHOOL DISTRICT,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before REAVLEY, JOLLY, and ELROD, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Kristi Dearman sued the Stone County, Mississippi, School District under 42 U.S.C. § 1983, claiming the non-renewal of her teaching contract was in retaliation for expressing her First Amendment support for a candidate for school superintendent. Dearman further contends that her procedural due process rights under the Fourteenth Amendment were ignored, saying that she was deprived of a hearing to contest her discharge. The district court granted summary judgment in favor of the School District. We affirm. Dearman has not shown that her protected speech was the cause of her discharge. Nor has she shown that she was denied adequate pre-termination process under the Fourteenth Amendment.

No. 15-60506

I.

Dearman was an employee of the Stone County School District from August 2002 until May 2013. During 2011, while serving as a guidance counselor at Stone County Middle School, Dearman openly supported fellow Stone County Middle School teacher James Nightengale in his candidacy for county superintendent. Nightengale was one of six candidates in the race for superintendent; he eventually lost the superintendent race to Gwen Miller. After Miller took office in January 2012, Dearman and several other teachers who had supported Nightengale were reassigned to different schools. Dearman was reassigned to Stone County Elementary School, where she assumed the identical position of guidance counselor.

In January 2013, Wendy Rogers, the Special Education Director for Stone County School District, visited Dearman's office. Rogers asserts that, while visiting Dearman's office, she noticed on Dearman's desk a folder containing an individualized education program ("IEP") for one of Nightengale's special education students. Dearman was not authorized to view the confidential student information in the IEP folder.[1] Dearman met informally with Rogers and Superintendent Miller a few days later. During the meeting, Dearman told Miller that she had, at Nightengale's request, reviewed the IEP folder to ensure that Nightengale had properly completed the evaluation paperwork. She also admitted to using Nightengale's login and password to access a confidential education profile on the School District's electronic database; again, Dearman asserted that she did this merely to review whether Nightengale had properly completed students' evaluation paperwork.

---

[1] Dearman disputes when Rogers visited her office, but does not dispute that, at some point, she was in unauthorized possession of the IEP folder for one of Nightengale's students.

No. 15-60506

On February 21, 2013, Miller notified Dearman by letter that she was temporarily suspended with pay, and that Miller was recommending that Dearman be "terminated" because she violated the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g *et seq.*, and the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. § 1400 *et seq.*, when accessing students' IEP information without the School District's authorization. Miller informed Dearman that she had a right to request a hearing before the Stone County School Board concerning the recommendation for discharge and interim suspension. Dearman requested a hearing, and on March 4, 2013, she addressed the School Board. When speaking to the Board, Dearman reiterated that, in accessing the IEP information, she was merely seeking to help Nightengale correctly complete and submit his student evaluations. She further asserted that, in the past, she had also helped Rogers with similar evaluations.

The Board never voted on Miller's recommendation for termination. On May 3, 2013, Dearman was informed by letter that Miller's recommendation for termination was being withdrawn and that the District would instead simply not renew her employment contract at the end of its one-year term. The letter informed Dearman that, under Mississippi state law, she was entitled to specific reasons for the nonrenewal, as well as a hearing before the School Board. *See* Miss. Code. § 37-9-109(a) (stating that an employee who has received notice of non-reemployment is entitled to "[w]ritten notice of the specific reasons for nonreemployment, together with a summary of the factual basis therefor."); Miss. Code. § 37-9-109(c) (stating that an employee who has received notice of non-reemployment is entitled to "[r]eceive a fair and impartial hearing before the board or hearing officer"). Dearman requested the reasons for her nonrenewal, and informed the School District that she wished to have a hearing. In response, the School District sent a letter, dated

3

No. 15-60506

May 17 and signed by Superintendent Miller, stating that Dearman's contract was not being renewed because of the FERPA and IDEIA violations. The School District also informed Dearman that a hearing before the Board was set for June 4, 2013.

Under Mississippi state law, any employee requesting a hearing for a nonrenewal decision is required to provide the school district in question with specific information regarding the employee's challenge to the nonrenewal; this information must be provided within five days of the scheduled date for the hearing. *See* Miss. Code § 37-9-109(d). If the employee fails to submit this documentation in a timely fashion, the nonrenewal is deemed final without a hearing. *See id.* On May 27, 2013, Dearman's counsel mailed Dearman's response. On June 3, 2013, however, Dearman received a letter from the School District stating that, because it had not received Dearman's response in a timely fashion, the nonrenewal of her employment contract was being deemed final without a hearing. Dearman requested that the School District continue the hearing and allow her to resend the response. The School District denied her request.

On April 30, 2013, Dearman filed suit against the School District.[2] Dearman alleged that the School District violated her First Amendment rights when the School District fired Dearman for supporting Nightengale's campaign during the 2011 election for superintendent. Dearman also alleged that the School District violated her due process rights under the Fourteenth Amendment when it decided not to renew her employment contract without first holding a hearing on the matter.

---

[2] Initially, Superintendent Miller was also named as a defendant in this action. The parties, however, stipulated that the claims against Miller were due to be dismissed. On March 20, 2015, the district court entered an order dismissing Miller as a defendant.

4

No. 15-60506

On June 22, 2015, the district court granted summary judgment denying Dearman's First Amendment and due process claims. The district court reasoned that the First Amendment claim was due to be dismissed because there was no evidence suggesting that Dearman's protected conduct (i.e., her support of Nightengale's election campaign) was a "substantial or motivating factor in the [School District's] adverse employment decision." The district court further reasoned that the due process claim was due to be dismissed because Dearman failed to comply with the state-law requirement that she submit documentation at least five days in advance of the hearing on the non-renewal of her employment contract. Because, under state law, Dearman's right to a pre-termination hearing was conditioned on her compliance with this submission requirement, the district court concluded that Dearman waived her right to a nonrenewal hearing.[3] Dearman filed a timely appeal.

## II.

"We review the grant of a motion for summary judgment de novo, applying the same standard as the district court." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citing *Threadgill v. Prudential Sec. Grp., Inc.*, 145 F.3d 286, 292 (5th Cir. 1998)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When considering a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving

---

[3] The district court also held that Dearman lacked a property interest in continued employment. At oral argument, however, the School District conceded that Miss. Code § 37-9-109's protections against arbitrary dismissal act to create an expectation in continued employment. Moreover we note that, in a previous opinion denying summary judgment to Miller on the due process claim, the district court asserted that Miss. Code § 37-9-109 did, in fact, create an interest in reemployment.

5

No. 15-60506

party." *Moss*, 610 F.3d at 922 (citing *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006)).

## III.

## A.

We begin by considering the district court's dismissal of Dearman's First Amendment retaliation claim. Dearman contends that the School District fired her in retaliation for supporting Nightengale's 2011 campaign for superintendent. As stated, Nightengale ultimately lost the race to Miller. Miller later recommended to the School Board that Dearman be fired for accessing students' confidential information, and was involved in the discussions that ultimately led to the nonrenewal of Dearman's employment contract by the School Board.

To prove a First Amendment retaliation claim, Dearman must show that "(1) she suffered an 'adverse employment decision'; (2) her speech involved 'a matter of public concern'; (3) her 'interest in commenting on matters of public concern . . . outweigh[s] the Defendant's interest in promoting efficiency'; and (4) her speech motivated the adverse employment decision." *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001) (quoting *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)). Here, the only contested issue is causation. To establish causation, Dearman must show that she engaged in protected conduct and that it was a motivating factor in her discharge. Then, the burden shifts to the School District to show, by a preponderance of the evidence, that it would have come to the same conclusion regarding Dearman's employment, even in the absence of the protected conduct. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Also, although wholly unbriefed by the parties, we point out that Dearman has not sued Superintendent Miller or any other person in an

individual capacity. Instead, she has sued only the School District. In bringing her First Amendment claim against the School District directly, Dearman has asserted a claim for municipal liability. *See Beattie*, 254 F.3d at 601–02. "Municipal liability for constitutional torts arises when the execution of an official policy causes the injury." *Id.* at 602 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). Under Mississippi law, the School Board itself, and not Miller, is the "official policy maker" for the School District with respect to personnel decisions. *See* Miss. Code § 37-7-301(p) (granting school boards the authority to "select all school district personnel in the manner provided by law"). The School District, however, apparently concedes that, with respect to nonrenewal decisions such as this one, the School Board has delegated final policy-making authority to Superintendent Miller. *See* Appellee's Brief, at 13 ("The Board actually made no decision in regards to the non-renewal as it is the Superintendent's decision alone unless the Board is asked for a hearing . . . . Since Dearman failed to comply with the statutory requirements for hearing on the non-renewal, the hearing did not take place and the decision to non-renew Dearman became final and the Board was never required to make a decision on the non-renewal."); *see also Beattie*, 254 F.3d at 601–02 (stating that, under Mississippi law, a school district's board is the "official policy maker" with respect to employment decisions, but acknowledging that "if, however, the board . . . delegated its policymaking authority in the area of at-will employment to [the superintendent], it may be liable" for the superintendent's decisions).

Assuming that the School Board delegated policy-making authority to Superintendent Miller, we conclude that Dearman has not met her initial burden of demonstrating that her protected speech was a "motivating" or "substantial" cause for her discharge. As the district court noted, Dearman has offered no evidence that Miller was even aware of Dearman's support for

7

Nightengale's rival campaign. It follows that, if Superintendent Miller were not aware of Dearman's support for Nightengale's campaign, that political support could not have been a motivating factor in her decision to fire Dearman. *See Tharling v. City of Port Lavaca*, 329 F.3d 422, 428 (5th Cir. 2003) ("It is axiomatic that a party cannot be 'substantially motivated' by a circumstance of which that party is unaware.").

Although Dearman concedes that she has offered no direct evidence that Superintendent Miller knew of Dearman's support for Nightengale's campaign, she argues that circumstantial evidence of Miller's knowledge exists. Specifically, Dearman points out that, before Miller's election as superintendent, Mike Gavin, the then-principal of Stone County Middle School, warned Dearman and several other Nightengale supporters that showing political support for Nightengale could have adverse employment consequences. Dearman further emphasizes that, after Miller's victory in the superintendent election, Dearman and other Nightengale supporters were transferred from Stone County Middle School to comparable positions at other schools.

This circumstantial evidence, however, does nothing to suggest that Miller had knowledge of Dearman's support for Nightengale's campaign. Perhaps more importantly, no evidence has shown that Miller held retaliatory animus as a result of that support. The statements cautioning Stone County Middle School teachers against showing support for Nightengale's campaign were made over a year before Dearman's discharge, when Miller was not the incumbent and there were five other candidates in the race. *See Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir.2001) ("'*Close* timing between an employee's protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a prima facie case of retaliation.'" (emphasis added) (quoting *Swanson v. Gen.*

No. 15-60506

*Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997))). Still further, there is no evidence that Miller had any involvement in or knowledge of the warning's issuance. Similarly, Dearman offers no evidence that Miller was behind the transfer of Nightengale supporters from Stone County Middle School to other schools.[4]

Finally, Dearman asks us to infer retaliatory animus from the fact that Nightengale, Miller's rival in the superintendent election, also had his employment contract non-renewed in early 2013.[5] Dearman alleges that the close proximity between her and Nightengale's' discharge, standing alone, creates a dispute of fact over whether she was fired for supporting Nightengale's campaign. That Nightengale was also fired, however, is irrelevant unless Dearman can offer some evidence that Miller actually knew of Dearman's support for Nightengale's campaign; as we have already explained, Dearman offers no such evidence. *See Thompson v. Somervell Cty., Tex.*, 431 F. App'x 338, 342 (5th Cir. 2011) ("Even at the prima facie stage, temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity."). In fact, Dearman herself acknowledged in her deposition that she has no evidence that Miller knew that she supported Nightengale's campaign for superintendent. *See* Deposition of Kristi Dearman, at 115 ("Q: Do you have any facts to—to make you believe that Gwen Miller knew that you supported Jim Nightengale [for superintendent]?" A: "No.").

---

[4] Indeed, Dearman does not take issue with the School District's assertion that the decision to transfer Dearman to Stone County Elementary School was made by Rogers, not Miller, and that the decision was made solely because the guidance counselor at the elementary school had recently retired, leaving a vacancy. She also concedes that these transfers, standing alone, are not "adverse employment actions," and offers no evidence that any other transferred teacher was later discharged.

[5] Nightengale's discharge was based, in large part, on the same allegations regarding the unauthorized sharing of confidential student information.

No. 15-60506

In sum, Dearman has failed to show that there is a genuine dispute of fact regarding whether Superintendent Miller knew of Dearman's support for Nightengale's campaign, and thus whether Dearman's protected conduct was a motivating factor in Miller's decision not to renew her employment contract. Accordingly, we affirm the district court's grant of summary judgment dismissing Dearman's First Amendment retaliation claim.

B.

Dearman also alleges that the School District deprived her of a protected interest in continued employment without due process of law when the School District decided not to renew her employment contract without first providing a hearing. The Fourteenth Amendment, standing alone, does not create a protectable interest in continued public employment. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). A government employee may, however, possess an interest in continued employment by operation of an employment contract or state law. *See id.* Where such an interest in continued employment exists, a public employer may not deprive an employee of continued employment without first providing due process of law. *See McDonald v. Mims*, 577 F.2d 951, 952–53 (5th Cir. 1978).

At oral argument, the School District conceded that, pursuant to Miss. Code § 37-9-109, Dearman has a property interest in continued employment. *See* Miss. Code § 37-9-109 (asserting that a non-renewed employee is entitled to, among other protections, "written notice of the specific reasons for nonreemployment" and the opportunity to receive "a fair and impartial hearing before the board or hearing officer" regarding the nonrenewal).[6] The School

---

[6] Our precedents also indicate that Miss. Code § 37-9-109, as interpreted by Mississippi state courts, creates a property interest in continued employment, notwithstanding that its protections are principally procedural in nature. *See McDonald*, 577 F.2d at 952 ("Those employee rights guaranteed by [Miss Code § 37-9-109] preclude the arbitrary dismissal of school teachers covered by the Act. This protection alone, under

No. 15-60506

District, however, contends that Dearman waived these state-law procedural protections when she failed to provide, within five days of the June 4th hearing date, a written response to the School District's reasons for her nonrenewal. *See* Miss. Code § 37-9-109(d) ("Any employee requesting a hearing shall provide the district, not less than five (5) days before the scheduled date for the hearing, a response to the specific reasons for nonreemployment . . . . If the employee fails to submit this documentation in a timely fashion, the nonrenewal is deemed final without a hearing."). In response, Dearman asserts that she did provide the School District with a written response within five days of the June 4, 2013 hearing date, and thus that she did not waive her right to a hearing.

Before arguing whether Dearman waived her state-law right to a nonrenewal hearing, the parties must consider what the Fourteenth Amendment's Due Process Clause requires. In the pre-deprivation context, all that federal due process requires is "notice and an opportunity to respond." *McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 155 (5th Cir. 1996). The record establishes that Dearman received both. On February 21, 2013, the School District notified Dearman that it was considering ending her employment. At a regular meeting of the School Board on March 4th, with Superintendent Miller in attendance, Dearman was given an opportunity to respond to the School District's reasons for her discharge. Dearman appeared before Superintendent Miller and the Board and defended herself from the accusations against her. Dearman also submitted a written rebuttal to the

---

Mississippi decisional law, creates a protectable property interest."). These cases arguably conflict with the general principle that a state law does not create a property interest in continued employment simply by conditioning removal on the employer's compliance with certain procedures. *See Bishop v. Wood*, 426 U.S. 341, 345–47 (1976).

11

allegations against her.   In other words, Dearman was afforded the full panoply of federal due process protections.

The termination of Dearman's employment was later recategorized as a "nonrenewal" of her contract.  Although the state-law procedural requirements for effecting each termination may differ, at bottom, the deprivation—i.e., an interest in continued employment—remains the same.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("'Property' cannot be defined by the procedures provided for its deprivation."); *see also Shows v. Wayne Cty. Sch. Dist.*, 71 F.3d 876, 1995 WL 725765, at *2 (5th Cir. 1995) (unpublished decision) (asserting that Miss. Code § 37-9-109 simply creates "an expectation in continued employment").  Moreover, the parties agree that, although the School District went from "terminating" Dearman's employment to simply not renewing her contract, the School District's stated reasons for ending Dearman's employment remained identical. Dearman had a full opportunity to address the charges against her at the March 4th Board meeting.  She does not contend that her response to the School District's reasons for terminating her employment would have changed because the School District decided to follow "nonrenewal" procedures to end her employment.  In short, a second hearing would have been redundant in every sense.

Nor does it matter, at least for the purposes of due process analysis, that the School District may have failed to comply with the nonrenewal procedures set forth in Miss. Code § 37-9-109.  The School District may have violated state law when denying Dearman an official nonrenewal hearing.  Given, however, that Dearman did receive both notice and an opportunity to respond, this state-law violation does not also amount to a violation of federal due process.  *See Whatley v. Philo*, 817 F.2d 19, 21 (5th Cir. 1987) ("To sustain the position that state-mandated procedures add to the federal constitutional minimum, one must show that 'the procedures promised [were] denied in such a manner that

the constitutional minimum is itself denied or an independent constitutional deprivation is effected.'" (quoting *Levitt v. Univ. of Tex. El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985))).[7]

In sum, the School District gave Dearman notice of its intent to end her employment. The School District provided her an opportunity to dispute the reasons for that decision. Dearman appeared before the Board and defended her actions; she also submitted a written response to the charges against her. Accordingly, Dearman's pre-deprivation due process rights were not violated.[8]

## IV.

Because Dearman has not established that her protected speech was the cause of her discharge, and because Dearman received the pre-discharge

---

[7] In her reply brief, Dearman hinted at the existence of a separate due process claim based on the deprivation of a "liberty interest" in her professional reputation. As counsel acknowledged at oral argument, at no point in this case's three-year history has Dearman clearly asserted a separate due process claim based on the violation of a liberty interest. We thus decline to address the claim on appeal.

[8] The dissenting opinion suggests Dearman was not afforded a "meaningful opportunity to respond" because, by the School Board's own concession, her March 4th appearance before the Board was not a formal "hearing." As we have noted, however, whether the March 4th Board meeting was an actual "hearing" under state law is irrelevant for the purposes of federal due process analysis. *See, e.g.*, *Patterson v. Yazoo City, Miss.*, 519 F. App'x 838, 842 (5th Cir. 2013) ("The jury was instructed that 'due process does not require a formal hearing, but it does require that the employee be given notice of the action that may be taken against him, and a meaningful opportunity to tell his side of the issue.' . . . [This instruction] accurately summarizes the law in this circuit.").

In addition, the dissenting opinion argues the School Board's decision to reword Dearman's discharge from a "termination" to a "nonrenewal" affects due process analysis because of the differing levels of protection state law affords employees in each situation. Under state law, the School Board must show some degree of unfitness when terminating an employee during her term of contract, while non-renewals of employment are guarded only against arbitrariness. Again, however, Dearman's interest in continued employment is the only property interest at issue, and Dearman has offered no argument regarding how this state-law distinction adds to her federal due process rights. *See Whatley*, 817 F.2d at 21. Moreover, as the dissenting opinion must acknowledge, not only is the burden on the School Board lighter in non-renewal actions, but Dearman is hard-pressed to argue that her nonrenewal was arbitrary, in so much as she has asserted no new grounds against dismissal that she would have offered had she been granted a second opportunity to go before the School Board.

No. 15-60506

process due under the Fourteenth Amendment, the district court's judgment dismissing Dearman's First Amendment retaliation and procedural due process claims is, in all respects,

AFFIRMED.

No. 15-60506

JENNIFER WALKER ELROD, Circuit Judge, dissenting in part:

I respectfully dissent from the majority opinion's conclusion on Kristi Dearman's claim regarding the non-renewal of her contract. The school district conceded at oral argument that Mississippi law conferred on Dearman a property interest subject to procedural due process protection in the renewal of her contract. The school district acknowledged in its brief and at oral argument that "no hearing t[ook] place" before that property interest was revoked. With the issues thus narrowed, the parties' briefing and oral argument focused entirely on whether Dearman waived any right to a hearing by failing to respond, pursuant to the procedure prescribed by Mississippi law, to the school district's stated reasons for non-renewing her contract. *See* Miss. Code § 37-9-109(d). On that question, Dearman has plainly created a genuine issue of fact: her counsel's affidavit indicates that he timely mailed the requisite response, and thus that no waiver occurred. *Cf. Carter v. Allstate Indem. Co.*, 592 So.2d 66, 73–75 (Miss. 1991) (holding, in the context of Mississippi statutory scheme governing notice of insurance cancellation, that evidence that a document was mailed creates a rebuttable presumption that it was received).

Instead, the majority opinion affirms summary judgment on a ground not considered by the district court and not argued by the school district on appeal: that the school board's March 4, 2013 meeting, at which Dearman spoke regarding the then-pending recommendation that she be terminated, sufficed as an opportunity to be heard regarding the (as yet non-existent) recommendation that Dearman's contract be non-renewed. This reasoning side-steps not only the general acknowledgement in the school district's brief that "no hearing t[ook] place" on the non-renewal recommendation, but also a

15

specific concession by the school district's counsel during a deposition that the March 4th meeting was "not a hearing on a termination or nonrenewal."

In any event, even putting these concessions aside, the March 4th meeting did not afford Dearman an opportunity to be heard on her non-renewal. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Without the use of a crystal ball, the March 4th board meeting could not possibly have supplied an opportunity to be heard "at a meaningful time" regarding a proposed non-renewal of which Dearman was not even notified until May 3, 2013, nearly two months later.

Nor could the March 4th board meeting have supplied an opportunity to be heard "in a meaningful manner," given that the substantive standards for termination and non-renewal are different under Mississippi law. A teacher can only be terminated "[f]or incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause." Miss. Code § 37-9-59. A non-renewal, by contrast, merely must not be "arbitrary." *McDonald v. Mims*, 577 F.2d 951, 952 (5th Cir. 1978); *see* Miss. Code § 37-9-105 (requiring that an employee receive notice "stating the reasons for the proposed nonreemployment"). This distinction belies the majority opinion's pronouncement that "Dearman had a full opportunity to address the charges against her at the March 4th Board meeting" and therefore that "a second hearing would have been redundant in every sense." I respectfully dissent.